CHARLES R. GRANNAN, Respondent, v. WESTCHESTER RACING
   ASSOCIATION, NEW YORK JOCKEY CLUB and AUGUST BEL-
   MONT et al., Individually and as Stewards of THE JOCKEY
   CLUB, Appellants.

1. APPEAL — QUESTIONS CERTIFIED.   On an appeal by allowance of the
Appellate Division of the Supreme Court, upon questions certified by it,
under section 190 of the Code of Civil Procedure, the Court of Appeals
has no authority to determine any of the questions involved except those
certified for that purpose.

2. REQUISITES OF CERTIFIED QUESTION.   A question certified by the
Appellate Division, under section 190 of the Code, should be a distinct
point or proposition of law, clearly stated, so that it can be definitely
answered without regard to other issues in the case, and should be a ques-
tion of law only.   If a question is stated in such broad and indefinite
terms that it will admit of one answer under one set of circumstances and
a different answer under another, or if it presents merely an abstract prop-
osition, and no facts are disclosed in the record which show that it arose
in the case, the Court of Appeals will decline to answer it.

3. RACING ASSOCIATIONS — RULES OF JOCKEY CLUB — L. 1895, CH. 570.
By force of the statute (L. 1895, ch. 570), a racing association organized
and conducting running races thereunder, and its patrons, are as much
subject to the reasonable rules and regulations of the New York Jockey
Club as they would be if the rules were incorporated into and actually
made a part of the act.

4. STATUS OF PATRON OF RACE.   A person who attends a running race
conducted by a racing association organized under the act of 1895, has,
by force of the statute, only a qualified right to be present; and when he
becomes a patron of such a race he subjects himself to the control of the
statute and the rules of the jockey club.

5. PUBLIC CORPORATIONS — CONDITIONS UPON EXERCISE OF RIGHTS.
The legislature has authority to determine and direct the conditions upon
which a corporation organized for a public purpose and enjoying a pub-
lic franchise shall exercise the rights conferred upon it.

6. VALIDITY OF POWER OF EXCLUSION FROM RACES.   The statutory pro-
vision (L. 1895, ch. 570) which confers upon an association organized there-
under power to exclude from its running races any person who had been
ruled off the turf by the jockey club, does not, in its application to a person
not a member of the association or having any property rights in it, but
who had purchased an admission ticket after having been properly ruled
off the turf, violate any contract, take any property or interfere with any
vested right.

7. VALIDITY OF RULES OF JOCKEY CLUB.   The rules of the jockey club
in respect to ruling persons off the turf, adopted anterior to the passage

57

of chapter 570 of the Laws of 1895, recognized by that act as valid so far as they were reasonable, and imposed by the act upon racing associations organized under it, cannot be deemed invalid, unless they are unreasonable.

8. REASONABLENESS OF RULES OF JOCKEY CLUB.    The rules of the jockey club, recognized by the act of 1895, permitting the club to exclude from races conducted by associations subject to its rules, a person guilty of dishonest practices or of a willful breach of its rules, cannot, as matter of law, be held unreasonable.

9. PRESUMPTION OF REASONABLENESS OF RULES.    The presumption is that the rules of the jockey club are reasonable; and in the absence of proof of any application to the state racing commission to modify or abrogate them, it will not be assumed that they are unreasonable, but the burden of showing them to be unreasonable rests upon the party who alleges it.

10. RIGHT TO ATTEND RACES LIMITED.    Under the act of 1895, the right of the public to attend running races conducted thereunder is a limited one, and in all respects subject to the reasonable rules of the jockey club, which were given the effect and force of a public statute.

11. PERMANENT EXCLUSION FROM RACES.    Permanent exclusion from all races conducted under the rules of the jockey club may be imposed and enforced as a punishment for a breach of its reasonable rules: and a temporary exclusion upon the occasion when the rules were violated is not the only penalty that can be inflicted.

12. RULING OFF TURF FOR GIVING PRESENTS TO JOCKEYS.    The rules of the jockey club, adopted prior to the passage of chapter 570 of Laws of 1895, which forbid jockeys to receive presents from any person other than the owner of the horses ridden by them, and provide that any person who knowingly aids or abets in any breach of the orders of the stewards, or gives, offers or promises, directly or indirectly, any bribe to any jockey, may be ruled off, are reasonable and valid; and a violation thereof can be committed and the penalty incurred by the making and offering of presents of money to jockeys, by one not the owner of the horses ridden by them, under circumstances justifying the inference that the presents were intended as bribes.

13. THE STATE CIVIL RIGHTS ACT.    The act " to protect all citizens in their civil and legal rights " (L. 1895, ch. 1042), was intended only to prevent exclusion from the advantages of places of accommodation or amusement on the ground of race, creed or color, and does not confer the absolute right to admission to a race meeting after having been properly ruled off the turf under a statute and authorized rules which impose conditions and limitations upon the right to hold races, not based upon race, creed or color, but applicable to all persons alike.

14. JUSTIFIABLE EXCLUSION FROM RACES.    Under the law (L. 1895, ch. 570), a decision made by the New York Jockey Club, through its stewards, on sufficient facts, ruling a person off the turf for his disobedience

of its reasonable rules and regulations, justifies a racing association, organized under the law of 1895, in thereafter excluding the person, although he has purchased an admission ticket, from its grounds when running races open to the public generally are being held, although he at the time tenders compliance with and expresses a willingness in the future to conform to the rules and regulations of the association, including those of the jockey club.

*Grannan* v. *Westchester Racing Assn.*, 16 App. Div. 8, reversed.

(Argued June 21, 1897; decided October 5, 1897.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 13, 1897, reversing an order of the Special Term which denied the plaintiff's motion for an injunction and vacated an order temporarily restraining the defendants from enforcing a resolution adopted by the stewards of the jockey club, and from depriving the plaintiff of any of the privileges enjoyed by the public at the various meetings controlled by it.

The New York Jockey Club is a corporation which was duly organized in 1894, under chapter 213 of the Laws of 1891. That act was entitled "An act to provide for the formation of corporations for improving the breeds of domestic animals," and provided for the organization of corporations for the purpose of promoting and holding exhibitions of domestic animals, and of improving the breed thereof.

The Westchester Racing Association was organized under chapter 570, Laws of 1895, an act for the incorporation of associations for the improvement of the breed of horses, to regulate the same, and to establish a state racing commission. This statute authorized the formation of corporations for the purpose of raising, breeding and improving the breed of horses, and conferred upon them the right, upon complying with its provisions, to hold one or more trotting or running race meetings in each year, and to conduct trotting or running races thereat. If a corporation organized under that act desired to conduct running races or running race meetings it was required to file a certificate stating that it actually maintained a race track of not less than one mile in length or circumference, and to

obtain a license from the state racing commission. It likewise conferred upon the racing commission the power, in a proper case, to issue a license for the term of one year, but expressly provided that every such license should contain a condition that all running races or running race meetings conducted thereunder should be subject to the reasonable rules and regulations from time to time prescribed by the jockey club, and that any such rule or regulation might be modified or abrogated by the state racing commission on giving the jockey club an opportunity to be heard.

It further provided that if any corporation or association to which a license should be granted should fail or refuse to comply with the provisions of that act, or with the terms and conditions of its license, the racing commission, upon complaint of the jockey club, should have power to cancel and revoke it. That act, as well as section 352 of the Penal Code, also forbade racing for any bet, stake or reward, except such as was allowed by special laws, declared such racing a public nuisance and made every person acting or aiding therein, or being interested in any such bet, stake or reward, guilty of a misdemeanor.

Among the rules and regulations of the jockey club were the following : " They (the stewards of the jockey club) shall have power to make inquiry into and deal with any matter relating to racing, and to rule off any person concerned in any fraudulent practices on the turf." (Rule 4.) The Stewards of the meetings of the associations holding races under these rules, or their deputies, " shall exclude from all places under their control every person who is warned off the turf." (Rule 16.) " No jockey shall bet on any race except through the owner of and on the horse which he rides, and any jockey who shall be proved to the satisfaction of the Stewards to have any interest in any race horse, or to have been engaged in any betting transaction, or to have received presents from persons other than the owner, will have his license at once revoked. Any person knowingly * * * aiding or abetting in any breach of the orders of the Stewards, will be ruled

off." (Rule 150.) "If any person give or offer, or promise, directly or indirectly, any bribe in any form to any * * * jockey, * * * every person so offending shall be ruled off." (Rule 162.) "Every person ruled off the course of a recognized association is ruled off wherever these rules have force." (Rule 163.) "When there is no specified penalty for violation of the rules of racing, or of the regulations of the course, the Stewards have power to disqualify, fine, suspend, expel from or rule off." (Rule 165.) "If any case occur which is not or which is alleged not to be provided for by these rules, it shall be determined by the Stewards in such manner as they think just and conformable to the usages of the turf." (Rule 166.)

The defendants, other than the jockey club and the Westchester Racing Association, were the stewards of the jockey club, who controlled its affairs and constituted its governing body. It appears from the papers contained in the record that there was a meeting of the stewards held about the first of September, 1896, when the plaintiff was called before them and examined with respect to his practices in connection with races, and in response to a question put to him, admitted that in September, 1895, he made a present of five hundred dollars to Fred Taral who was a jockey licensed by the club, and that it was proved that he offered Henry Griffin, another licensed jockey, five hundred dollars, which he declined to accept.

Thereafter at a special meeting held September 28, 1896, the stewards adopted the following resolution : "It has come to the knowledge of the Stewards of the Jockey Club that Fred Taral, jockey, received a present of $500 during the season of 1895, in violation of the rules of racing. Owing to Taral's universally accepted good character, he is reprimanded by the Stewards, ordered to refund the money received by him in violation of the rules, and all jockeys are warned that the penalty for accepting presents, under Rule 150, will be strictly enforced. Resolved, That Riley Grannan be warned and ruled off the turf for offering and making presents to jockeys, in violation of the rules of racing."

On the seventeenth day of October, 1896, at the office of the Westchester Racing Association at Morris Park, the plaintiff purchased a ticket to the races which were then being held by it at that place. The ticket in form entitled the bearer to enter the race track and enjoy the privilege of witnessing the races. Upon presenting it and demanding the right to enter, he was denied admission and excluded therefrom by the association.

By this action he sought to have the resolution of the jockey club declared null and void, and to enjoin the defendants from enforcing it, or depriving him of the privileges enjoyed at the various meetings controlled by the club. The plaintiff applied for an injunction to restrain the enforcement of that resolution, and to restrain the defendants from depriving him of any of the privileges enjoyed by the public at the various meetings held under its rules and regulations. An order to show cause at Special Term why such an injunction should not be issued was granted, and made returnable on the thirty-first day of October, 1896. The defendants were also enjoined by it from enforcing such resolution, until the hearing and determination of the Special Term. After a hearing, the Special Term denied the plaintiff's motion and vacated the temporary injunction already issued. From that order the plaintiff appealed to the Appellate Division, where it was reversed, and the plaintiff's motion to continue the injunction was granted.

Thereafter the defendants applied to the Appellate Division for leave to appeal to the Court of Appeals, which was allowed, the court holding that certain questions of law had arisen which, in its opinion, ought to be reviewed by the Court of Appeals, and thereupon it certified to this court two questions, which are as follows : " 1st. Whether under the law any person who presents himself in fit condition and demeaning himself properly and who tenders compliance with the reasonable rules and regulations of the racing association, including its price of admission, is entitled to admission to the grounds of such racing association when races or other public

amusements are being held, or has said association the right to admit as spectators those whom it may elect, and to exclude others solely of its own volition?

" 2d. If the meetings of the racing association be open to the public generally, can such association lawfully exclude a person solely because that person has upon a former occasion failed to observe its reasonable rules and regulations, if at the time when he presents himself for admission he expresses a willingness to comply with the rules and regulations of such racing association, and there is nothing to justify the conclusion that he will not do so?"

*Julien T. Davies* and *Charles Francis Stone* for appellants. The provisions of chapter 1042, Laws of 1895, do not afford any basis for the plaintiff's claim. (*Civil Rights Cases*, 109 U. S. 3; Penal Code, §§ 381, 383; *People* v. *King*, 110 N. Y. 427.) The interest of the public in the property of a racing association is qualified by the necessity that the public submit to the reasonable rules and regulations of the jockey club. (L. 1895, ch. 570; *Thomson* v. *U. P. R. R. Co.*, 4 Dill. 322; *Jencks* v. *Coleman*, 2 Sumn. 221; *Hall* v. *De Cuir*, 95 U. S. 485; *Brown* v. *M. & C. R. Co.*, 7 Fed. Rep. 51.) A person in the situation of this plaintiff has no right, inchoate or other, entitling him to admission to the grounds of a racing association. (*Rex* v. *Benchers, etc.*, 4 B. & C. 853; *Parcel* v. *Daly*, 19 Abb. [N. C.] 301.) The stewards of the jockey club, to whom, for the conservation of the interest of legitimate racing, the widest discretionary powers of regulation have been committed in the first instance by the legislature, may enforce fairly and justly a proper and reasonable rule of racing. (*Corrigan* v. *C. I. J. Club*, 20 N. Y. Supp. 437; *Walker* v. *R. R. Co.*, 5 Ohio, 38; *Cooper* v. *Williams*, 4 Ohio, 253; High on Injunctions, § 763.)

*Joseph S. Auerbach* for appellants. The jockey club, under the authority conferred upon it by the legislature, may exclude an offender against its rules from all race courses licensed by

the state racing commission. (*People ex rel.* v. *Grant*, 126 N. Y. 473; *Regina* v. *Cockburn*, 4 El. & B. 82; *State* v. *Van Du Sluis*, 42 Minn. 129.) The legislature having delegated to the jockey club the power in the first instance, subject to revision by the state racing commission, to establish rules for racing, the reasonableness of any rule is presumed. (*Slattery* v. *Naylor*, L. R. [13 App. Cas.] 449; *State* v. *Freeman*, 38 N. H. 428; *Regina* v. *Edmonds*, 4 El. & B. 993; 123 N. Y. 111.)

*Benjamin F. Tracy* for respondent. In this state the conducting of horse races is a public function and horse races are a public amusement, in which every citizen, as a matter of right, is entitled to participate. (L. 1802, ch. 44; *Van Valkenburgh* v. *Torrey*, 7 Cow. 252; *Gibbons* v. *Gouverneur*, 1 Den. 170; L. 1821, ch. 193; Penal Code, § 352; L. 1854, ch. 269; L. 1857, ch. 558; L. 1860, ch. 523; L. 1865, ch. 155; L. 1870, ch. 131; L. 1887, ch. 479; L. 1895, ch. 570; *Schuman* v. *Fort Wayne*, 127 Ind. 109; Morawetz on Priv. Corp. § 1114; *Munn* v. *Illinois*, 94 U. S. 113.) Under the Civil Rights Act of New York the Morris Park race course is a place of public amusement which every citizen, against whom there is no reasonable ground of objection, has the right to attend. (L. 1895, ch. 1042; *Comm.* v. *Quinn*, 164 Mass. 11; *People* v. *King*, 110 N. Y. 418; *People* v. *Budd*, 117 N. Y. 1; Morawetz on Priv. Corp. § 1114; 94 U. S. 113.) The action of the stewards of the jockey club in ruling the plaintiff off the turf, without a hearing, was unlawful and void, because there was no rule authorizing such action. (*Wachtel* v. *N. W. & O. B. Society*, 84 N. Y. 28; *Vatable* v. *N. Y., L. E. & W. R. R. Co.*, 96 N. Y. 49; *De Gellert* v. *Pool*, 18 N. Y. S. R. 1008; *Wilson* v. *Wall*, 6 Wall. 83; *Wilde* v. *Gibson*, 1 H. L. Cas. 605; *Kountze* v. *Kennedy*, 147 N. Y. 124; *Derry* v. *Peek*, L. R. [14 App. Cas.] 337.) The right of a person charged with an offense, conviction of which may deprive him of his property or of privileges, to be notified of such charge and to have a hearing thereon depends not upon charter or

by-law, but is guaranteed to him as a matter of common law
and common justice. (*Murdock* v. *Phillips Academy*, 12 Pick.
243; *Innis* v. *Wylie*, 1 C. & K. 257; *Wood* v. *Wood*, L. R. [9
Exch.] 190; *White* v. *Brownell*, 2 Daly, 329; *Fritz* v. *Muck*,
62 How. Pr. 69; *Watchel* v. *N. W. & O. B. Society*, 84 N. Y.
28; *Fisher* v. *Keene*, L. R. [11 Ch. Div.] 353; *Labouchere* v.
*Earl of Wharncliffe*, L. R. [13 Ch. Div.] 346; *Loubat* v. *Le
Roy*, 40 Hun, 546; *People ex rel.* v. *Medical Socy.*, 32 N. Y.
187.) The first question certified to this court by the Appellate
Division should be answered in the negative. (*Atwater* v. *D.,
L. & W. R. R. Co.*, 48 N. J. L. 55; Dillon on Mun. Corp.
[3d ed.] § 423; *People* v. *Marx*, 99 N. Y. 377; *Boyd* v. *U.
S.*, 116 U. S. 616; *G., C. & S. F. R. Co.* v. *Ellis*, 165 U. S.
150; *Butchers' Union Co.* v. *Crescent City Co.*, 111 U. S.
746; *Curran* v. *Galen*, 152 N. Y. 33.) The second question
certified to this court by the Appellate Division should be
answered in the negative. (Penal Code, §§ 2, 7; *People ex
rel.* v. *Common Council of Troy*, 82 N. Y. 575; *In re Mann-
ing*, 139 N. Y. 446.) The jurisdiction of a court of equity
to restrain the enforcement of the resolution of the stewards
in the present case clearly exists. (*Hutchinson* v. *Lawrence*,
67 How. Pr. 38; *White* v. *Brownell*, 2 Daly, 329; *Olery* v.
*Brown*, 51 How. Pr. 92; *People ex rel.* v. *Alpha Lodge*, 13
Misc. Rep. 677; *Atwater* v. *D., L. & W. R. R. Co.*, 48 N.
J. L. 55; *Beddow* v. *Beddow*, L. R. [9 Ch. Div.] 89, 92; *Q.
H. C. G. M. Co.* v. *Beall*, L. R. [20 Ch. Div.] 501; *Bonnard*
v. *Perryman*, L. R. [2 Ch. Div. 1891], 269, 283; *Monson* v.
*Tussauds*, L. R. [1 Q. B. D. 1894], 671; *State* v. *Patterson*,
37 S. W. Rep. 478.)

MARTIN, J. To a clear and proper comprehension of this
case as presented, it is necessary at the outset to understand
precisely what is before us and how far we are authorized to
pass upon the various questions determined by the Special
Term and learned Appellate Division.

Section 190 of the Code of Civil Procedure confers upon
the Court of Appeals jurisdiction to review every actual deter-

mination made by the Appellate Division of the Supreme
Court, where the Appellate Division allows the same, and certifies that one or more questions of law have arisen which, in
its opinion, ought to be reviewed by the Court of Appeals,
and it expressly provides that in such a case the appeal brings
up for review the question or questions so certified, and no
other. As this court has no jurisdiction except such as is conferred upon it by statute (*Szuchy* v. *Hillside Coal & Iron
Co.*, 150 N. Y. 219), it is manifest that it has no authority to
determine any of the questions involved except those certified
for that purpose, and, consequently, several of the questions
argued by the respondent's counsel are not before us. Whether
the plaintiff had proper notice of the hearing before the
jockey club, or whether his violation of its rules was established by sufficient or competent evidence, are not before this
court, as neither of those questions was certified for its
determination.

When examined alone, the matters certified appear to be
merely abstract questions, such as the court will not decide.
But, although they are not as definite and clear as they should
have been, yet, when considered in the light of the facts and
proceedings shown by the record, we are inclined to the view
that there is one question that was involved in the decision of
the Appellate Division which is sufficiently presented.

The first question is vague, uncertain and unsatisfactory.
A question certified should be a distinct point or proposition
of law, clearly stated, so that it can be definitely answered
without regard to other issues in the case and should be a
question of law only. (*Jewell* v. *Knight*, 123 U. S. 426, 432;
*Dennistoun* v. *Stewart*, 18 How. [U. S.] 565; *Fire Ins.
Assn.* v. *Wickham*, 128 U. S. 426.) If a question is stated
in such broad and indefinite terms that it will admit of one
answer under one set of circumstances, and a different answer
under another (*Enfield* v. *Jordan*, 119 U. S. 680, 691), or if
it presents merely an abstract proposition, and no facts are disclosed in the record which show that it arose in the case, the
court should decline to answer it. (*Havemeyer* v. *Iowa*

*County*, 3 Wall. [U. S.] 294, 303.)   These are the rules established by the Supreme Court of the United States in cases certified to that court upon a division of opinion by the judges below, and state, as we think, the correct rules which should be observed by the Appellate Division in certifying questions to this court under the provisions of section 190 of the Code.   A careful study of this case has led us to the conclusion that the learned Appellate Division intended to present to this court for its determination the question, first, whether a racing association, organized under the law of 1895, can arbitrarily and capriciously, without reason or sufficient excuse, exclude a person from attending its races who offers to comply with the reasonable rules of the association.   Such being its purpose, while perhaps it might be answered in the negative, still it clearly falls within the condemnation of the foregoing rules.   Moreover, the decision of the Appellate Division shows that that question was not determined by it, but that the case was decided upon other grounds, which are presented by the second question.   Under these circumstances, we think the jurisdiction of this court to pass upon the first question is at least doubtful, and that it ought not to be answered.

Therefore, the only question we are required to consider is the second one.   If correctly understood, its fair purport is whether, under the law, the decision of the jockey club ruling the plaintiff off the turf for his disobedience of its reasonable rules and regulations, justified the Westchester Racing Association in excluding him from its grounds when races open to the public generally were being held, although he at the time tendered compliance with, and expressed a willingness in the future to conform to, the rules and regulations of the association, including those of the jockey club.

It is to be observed that the only legal right the Westchester Racing Association possessed to conduct races for any stake or reward was under and by virtue of a license issued by the racing commission pursuant to the statute of 1895.   As that statute expressly required every such license to contain a

condition that all running races or running race meetings conducted thereunder should be subject to the reasonable rules and regulations of the jockey club, it follows that by the statute the right to conduct such races was made subject to and required to be exercised in conformity with the rules and regulations thus made. Manifestly, under the statute, the Westchester Racing Association and its patrons were as much subject to those rules as they would have been if incorporated into and actually made a part of the act. Thus the right to establish and conduct races in this state was a limited one, dependent upon the consent of the racing commission, to which was added the further condition that all running races and running race meetings should be governed by those rules. The association could legally appoint and maintain its races, only upon the condition that it complied with them. On the other hand, a person who frequented such races had only a qualified right to be present. When the plaintiff became a patron of races conducted under this act, he subjected himself to the control of the statute and the rules of the jockey club. It was upon condition that he should be governed by and subject to the liabilities and penalties prescribed by them that he acquired a right to attend. By attending he voluntarily incurred the liability of being ruled off the turf in case he was guilty of corrupt, fraudulent or improper practices, or of any other conduct which, under the rules, justified it. Under the provisions of the statute and its license the Westchester Racing Association was bound to obey those rules by refusing the plaintiff admission to its races after he was ruled off the turf, or forfeit all rights under its license.

The decision of the learned Appellate Division seems to have been based solely upon the ground that these rules, so far as they provided that a person might be ruled off the turf, were unreasonable and invalid. The conclusion that they were invalid was founded upon the theory that the racing association was a corporation organized for a public purpose, enjoyed a public franchise, and, therefore, the public had an interest which required the corporation to admit to its races

all persons who applied for admission and paid the entrance fee charged. We think this position cannot be sustained. If the learned Appellate Division was correct in holding that the Westchester Racing Association was a corporation organized for a public purpose and enjoyed a public franchise, then it is plain that the legislature possessed authority to determine and direct the conditions upon which it should exercise the rights thus conferred upon it. (*People* v. *King,* 110 N. Y. 418; *People* v. *Budd,* 117 N. Y. 1; *People* v. *Ewer,* 141 N. Y. 129; *People ex rel.* v. *Warden,* 144 N. Y. 529; *People* v. *Havnor,* 149 N. Y. 195.) That the legislature was authorized to confer upon a corporation organized under the statutes of the state power to regulate all races which should be conducted under its rules and a license granted by public officers of the state, is not and cannot be successfully denied. The law conferring the power upon the Westchester Racing Association to exclude from its races any person who had been ruled off the turf by the jockey club, in no way invaded any right of the plaintiff, who was not a member of the association and had no property rights in it. Such legislation violated no contract, took away no property and interfered with no vested right. Thus, it is quite obvious that these rules could not be regarded as invalid, unless they were unreasonable, for, as we have already seen, they were adopted anterior to the passage of the act of 1895, and that act expressly recognized their existence and validity, so far as they were reasonable, and made them applicable to all races held under it.

This brings us to the consideration of the reasonableness of the rules. At the time of their adoption the stewards of the jockey club believed that corrupt practices prevailed upon the turf, in consequence of the willful mismanagement of jockeys who had received presents from persons other than the owners of the horses they rode. To prevent a continuance of those practices they adopted a rule forbidding such presents. The obvious purpose of the act of 1895 was to permit honest and legitimate racing, and prevent the evils which had previously attended that class of amusements. Although it author-

ized horse racing, it was intended to guard and restrict it so as to prohibit the abuses that had hitherto existed. To accomplish that end a state racing commission was created, and the jockey club was practically made the supervisor of all running races and running race meetings, with power to make such reasonable rules and regulations as it might from time to time deem proper for their control.

Considering the corrupt practices which formerly prevailed, that the purpose of the statute and rules of the club was to prevent their continuance, and that the rules were in effect adopted by statute and made applicable to all racing associations organized under it, it is manifest that the rules which permitted the jockey club to exclude a person guilty of dishonest practices, or of a willful breach of its rules, from races conducted by associations subject to them, cannot, as a matter of law, be held unreasonable.

Moreover, if the rules were unreasonable the state racing commission might have modified or abrogated them, and as no such application was shown to have been made, that they were so will not be assumed, the presumption being that they were reasonable, and the burden was upon the plaintiff to show the contrary. (*Mayor* v. *D. D., E. B. & B. R. R. Co.*, 133 N. Y. 104, 111.)

We think the illustrations drawn by the learned justice who wrote the opinion of the Appellate Division from the law relating to common carriers or managers of places of public amusement have no bearing upon the question under consideration. In the cases cited the public possessed certain legal rights, and certain duties were imposed by law, which were required to be observed by such carriers and managers. In this case the law expressly provided that the license which gave the association the right to hold races could be granted only upon the condition that they were to be subject to the rules of the club. Thus, in the cases cited by the learned justice, the law established the public right which was demanded, while under the statute of 1895 the right of the public was a limited one, and in all respects subject to those rules, which were given the

effect and force of a public statute.    Between these cases there is a clear and obvious distinction.

Nor do we think the decision of the Appellate Division, that a temporary exclusion upon the occasion when the rules were violated was the only penalty that could be inflicted, can or ought to be sustained.    It is plain that the exclusion from the race track of an offender, for only the particular day on which he violated the rules, would not reach the evil.    Such a violation would not be likely to be discovered at the time, and, hence, no punishment could follow.    Even if it was discovered the punishment would not be commensurate to the offense.    It may be that punishment by a permanent exclusion from all races conducted under the rules of the jockey club is severe, and, yet, the offense is a serious one, meriting condemnation, and a severe punishment was necessary to prevent fraudulent and dishonest practices.

That the plaintiff was aware of the existence of these rules was found by the Special Term upon evidence which authorized that conclusion.    He, therefore, must have known that if he committed a willful breach of the rules, or was guilty of corrupt or dishonest practices, he might be excluded from the turf.

By the rules of the jockey club, its stewards were invested with power to deal with all matters relating to racing even where no special penalty was provided, were authorized to rule a delinquent or transgressor off the turf, and cases not specially provided for were to be determined by them as they deemed just and in conformity with the rules of racing. Thus, there was conferred upon the stewards of the jockey club jurisdiction to deal with all offenses against its rules or the usages of the turf, and they were clothed with a discretion as to the character and extent of the punishment to be inflicted.    This discretion was limited only by law and the reasonable restrictions contained in the rules.

Jockeys were expressly forbidden to receive presents from any person other than the owners of the horses they rode, and any person who aided or abetted in any breach of the orders

of the stewards, or who gave, offered or promised, directly or indirectly, any bribe to a jockey might be ruled off. That the plaintiff made to a licensed jockey a present of five hundred dollars, and offered a like amount to another, were established and not denied. Such acts were plainly prohibited by the rules. That, by doing so, the plaintiff aided and abetted the jockey in breaking them is quite clear. Moreover, that the making of such a present was intended as an indirect bribe to the jockey, there can be little doubt. At least, the facts were such as to justify the stewards in finding that that was the character of the transaction. It was the plain duty of the club to prevent dishonesty on the part of its jockeys, and corrupt and illegal practices on the part of those who attended races conducted under its rules. An important, if not the principal, method of enforcing obedience to its rules and the usages of the turf, was the usual one of ruling the delinquent off the track. Some penalty was necessary to compel due and proper obedience, and it is quite clear that the one provided was the most efficient, if not the only one that would secure that result.

These considerations lead us to the conclusion that the rules and regulations of the jockey club were reasonable and valid; that the stewards of the club had authority to rule the plaintiff off the turf, and, consequently, that the order of the Special Term was right and should have been affirmed unless the respondent's contention that he had an absolute right, by virtue of the provisions of chapter 1042 of the Laws of 1895, to attend the races held by the association, can be sustained. That statute provides: " Section 1. That all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of inns, restaurants, hotels, eating-houses, bath-houses, barber-shops, theatres, music halls, public conveyances on land and water, and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law and applicable alike to all citizens. § 2. That any person who shall violate any of the provisions of the foregoing

section by denying to any citizens, except for reasons applicable alike to all citizens of every race, creed or color, and regardless of race, creed and color, the full enjoyment of any of the accommodations, advantages, facilities or privileges in said section enumerated, or by aiding or inciting such denial, shall for every such offense forfeit and pay a sum not less than one hundred dollars nor more than five hundred dollars to the person aggrieved thereby.   *   *   * "

This statute in its essential particulars is like the act of Congress, known as the Civil Rights Act, which was under consideration in the *Civil Rights Cases* (109 U. S. 3).   In those cases the court, in substance, said that the purpose of that law was not to declare that all persons should be entitled to the full and equal enjoyment of the advantages mentioned in the statute, but that such enjoyment should not be subject to any conditions which were applicable only to citizens of a particular race or color.

We think the purpose of the statute now under consideration was to declare that no person should be deprived of any of the advantages enumerated, upon the ground of race, creed or color, and that its prohibition was intended to apply to cases of that character, and to none other.   It is plain that the legislature did not intend to confer upon every person all the rights, advantages and privileges in places of amusement or accommodation, which might be enjoyed by another.   Any discrimination not based upon race, creed or color does not fall within the condemnation of the statute. Neither the statute authorizing the holding of races or race meetings, nor the rules of the jockey club, made any such distinction, as the penalties for a breach of the rules of the club or of the usages of the turf are applicable to all alike.

Besides, the rights conferred by chapter 1042 are expressly made subject to any conditions or limitations established by law which are applicable alike to all citizens.   In this case, the statute authorizing races and practically adopting the rules of the jockey club, has subjected the right to hold races to certain conditions and limitations, which are not based upon

race, creed or color, but are applicable to all alike. Therefore, it is clear that this statute conferred upon the plaintiff no right which entitled him to admission to the grounds of the racing association after he had been properly ruled off the track, and that the refusal of the association to admit him was not in conflict with its provisions.

Thus we are led to the conclusion that, under the law, the decision of the jockey club ruling the plaintiff off the turf for his disobedience of its reasonable rules and regulations justified the Westchester Racing Association in excluding him from its grounds when races open to the public generally were being held, although he at the time tendered compliance with and expressed a willingness in the future to conform to the rules and regulations of the association, including those of the jockey club.

It follows that the first question should not be answered; that the second question should be answered yes; that the order appealed from should be reversed and the order of the Special Term, denying the plaintiff's application for an injunction and vacating the temporary injunction that had been granted, should be affirmed, with costs to the defendants in all the courts.

All concur, except GRAY, J., absent.

Ordered accordingly.