Hon. William G. Barry Chairman New York State Racing and Wagering Board
This is in reply to your letter of January 18, 1978 in which you ask whether a harness track under the jurisdiction of the New York State Racing and Wagering Board may legally conduct a business promotion whereby members of a specified ethnic group will be eligible for a reduced admission price.
Executive Law § 296, subdivision 2(a) (Human Rights Law) provides, in part:
 "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sex or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof* * * or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sex, or disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, sex or marital status, or having a disability is unwelcome, objectional or not acceptable, desired or solicited."
It is well settled that a race track is a place of public accommodation or amusement within the purview of Federal (42 U.S.C. § 2000a) and State civil rights laws. (People v. Licata, 28 N.Y.2d 113 [1971]; Madden
v. Queens County Jockey Club, 296 N.Y. 249 [1947]; Grannan v. WestchesterRacing Ass'n, 153 N.Y. 449 [1897]; Bonomo v. Louisiana Downs [Ct. of Appeals, La.] 337 So.2d 553 [1976]; Pacific Turf Club, Inc. v. Cohen
[Cal., 1951] 231 P.2d 527.)
In a leading legal encyclopedia it is stated that:
 "* * * a preference given to one group automatically discriminates against all other persons who are not members of that group and who are in competition with it, and thus results in a form of discrimination which some courts have styled `inverse' or `majority' discrimination, but which most courts have called `reverse' discrimination.
 "`Reverse discrimination' may be defined as policy or practice which favors, and sometimes prefers, women or members of minority groups, and thus consequently discriminates, to some extent at least, against males and white persons." (15 Am. Jur. 2d 717 [Civil Rights, § 207].)
As you are aware, on July 19, 1972 the New York State Human Rights Appeal Board, in Abosh v. New York Yankees (Case No. CPS 25284-71) held that the New York Yankees engaged in an unlawful discriminatory practice in violation of Executive Law § 296, subdivision 2 by holding a "Ladies Day" whereby female patrons were admitted to Yankee Stadium for a lesser admission charge than was required of male patrons.
I conclude that an "ethnic night" promotion at a raceway whereby members of a specified ethnic group are given preferential treatment in the form of a reduced admission price would be violative of Executive Law §296, subdivision 2(a).