### CORRIGAN *v.* CONEY ISLAND JOCKEY CLUB.

(New York Superior Court—General Term, February, 1893.)

Plaintiff, engaged in the business of breeding and running horses for stakes, brought action against defendant, a domestic corporation owning and operating a race track, to recover the amount of the second money in a race called the Futurity of 1891. The complaint among other things alleged that defendant had certain privileges allowed to other similar corporations, and that it discriminated against plaintiff in respect to the allowances of races. The demand for relief was in substance that such discrimination should be stopped. On demurrer to the complaint, *held*, that although the complaint contained a statement of facts sufficient to constitute a cause of action at law for the amount of said second money, there could be no judgment in favor of plaintiff based upon it, as there was no demand for a money judgment and no answer.

Also *held*, that as defendant is a private corporation, it could choose its own customers and do or refuse to do any particular business offered it.

Also *held*, that the right of defendant to make and register bets and sell pools on the result of its races does not impose upon it the fulfillment of a public duty. The right to register bets and sell pools exists at common law and is only taken away in this state by statute. The prohibition of the statute is merely removed from racing associations during certain periods.

APPEAL from an interlocutory judgment overruling defendant's demurrer. The opinion states the case.

*Platt & Bowers,* for defendant (appellant).

*Howe & Hummel,* for plaintiff (respondent).

DUGRO, J.  This is an appeal from an interlocutory judgment overruling defendant's demurrer.

From the complaint it appears that the plaintiff at the times referred to in his pleading was engaged in the business of breeding and running horses for stakes and purses at the different race tracks throughout the United States, and has over $100,000 invested in said business; that defendant at these times was and still is a corporation organized under the laws of the state of New York, and the owner of a race track; that one of the objects for which it was formed is the improvement of the breed of horses; that to accomplish this object it conducts horse races, and that to induce owners of thoroughbred race horses to compete and to raise the standard of such horses, the defendant makes up what are known as stake and purse races, which are run at its track each year; that several other corporations do the same for the same purposes.

After setting forth the way in which stake and purse races are made up and describing the manner in which horses are entered in these races, the complaint states that in order to be a competitor in a stake race, it is necessary that entries be made before certain times fixed for each event; that the right to enter horses is granted by the defendant, as it is by every similar corporation, to every person of good repute who desires his horse to contest for either a purse or a stake; that defendant, in addition to the right granted to it by its incorporation, to have contests of speed and endurance and to continue the business of giving races, has further rights and privileges granted to it by the state; to wit: The right to make and register bets and to sell pools on the result of such races.

The complaint further sets forth a statement of facts relied upon as sufficient to constitute a cause of action at law to recover the amount of the second money in a race called the Futurity race of 1891; and continuing, states that the defendant, in order to punish the plaintiff for having applied to this court for redress against an unwarranted action of the defendant, ordered that the plaintiff be thereafter excluded from

making any entries whatever, or racing his horses upon defendant's track.

The complaint further states that several racing corporations, including the defendant (owning and controlling the principal race tracks in the state of New York), illegally and for the purpose of oppression and coercion, and to form a monopoly to prevent opposition, confederated together under the title of the board of control; that the board is composed of the officers of each of said corporations, and is not incorporated; that the board, without right, ordered that no entries of any horse for races be received from the plaintiff by any of the corporations referred to; that each of these corporations has the same privileges and franchises granted by law as the defendant; that since said order was made, plaintiff forwarded in writing, pursuant to the rules and regulations of defendant, an entry of a horse for a sweepstake race; that defendant refused the entry. Plaintiff alleges that in order to become entitled to run horses in certain stake races, it is necessary for entries to be made prior to the closing of the several stakes, which closing the defendant has announced as about January 15, 1892, for the spring races, and August 15, 1892, for the autumn races.

The plaintiff alleges that he will sustain irreparable injury unless the relief he desires is granted. The relief he demands is contained in the last subdivision of the complaint, which reads as follows : Wherefore, plaintiff prays the judgment of this court that the said defendant be required to grant to plaintiff the same privileges as are accorded to all other reputable persons in good standing; that the defendant be ordered and adjudged to receive such entries as this plaintiff may make in races to take place on said race course; that the defendant be ordered and adjudged, so far as in its power lies, to cause the said order of the said confederation, to wit, the board of control, to be rescinded and revoked, and that the plaintiff have such other and further relief as may be just and equitable, and that plaintiff recover costs and disbursements.

The demurrer was to the complaint. It was overruled upon

the ground that the complaint presents a legal cause of action to recover the amount of the second money in the Futurity race of 1891, and, therefore, is not demurrable.

Although the complaint may contain a statement of facts sufficient to constitute a cause of action at law for the amount of this second money, there could have been no judgment in favor of the plaintiff based upon it, as there was no demand for a money judgment and no answer. Section 1207 of the Code of Civil Procedure provides that "where there is no answer the judgment shall not be more favorable to the plaintiff than that demanded in the complaint." That demanded in the plaintiff's complaint was for equitable relief only, and to this he was not entitled.

As there could have been no judgment upon the trial in favor of the plaintiff, it follows that judgment should have been given in favor of the defendant. *Kelly* v. *Downing*, 42 N. Y. 71; *Willis* v. *Fairchild*, 51 N. Y. Super. Ct. 405; *Alexander* v. *Katte*, 10 Daly, 506; *Swart* v. *Boughton*, 35 Hun, 281. There is a dictum in *Wetmore* v. *Porter*, 92 N. Y. 76, which would lead to a contrary conclusion; but the authorities cited in support of it are not in point and do not sustain the statement, as in all of the cases cited answers had been interposed. In *Porous Plaster Co.* v. *Seabury*, 43 Hun, 611, the complaint contained a proper demand.

I think that the plaintiff is not entitled to the relief demanded, for reasons which are intended to be stated by the following :

Aside from the statement of facts which are claimed to be sufficient to constitute a cause of action at law, the gist of the plaintiff's claim is that the defendant is a corporation organized under the laws of the state of New York, having certain privileges allowed to other similar corporations, and that it discriminates against him in respect to the allowance of entries to races. His demand for relief, is in substance, that this discrimination should be stopped. As no contractual relation is claimed to exist between the parties, the right to have the relief asked, depends upon whether or not the defendant is

under a duty to allow all persons against whom it has no reasonable ground for objection, to enter horses in its races for stakes and purses, and this question depends for its determination, upon the character of the defendant's duties to the public. It has not been claimed that any duty in the premises was imposed by a specific statutory provision, but it is rather contended that the application of general principles of law, and " a reasoning by analogy, from things that are settled, in order to establish principles to govern things that are unsettled," entitle the plaintiff to the relief sought. It has been repeatedly held that railroad, telegraph and telephone companies are *quasi*-public servants. The nature of their business makes them so, and they are, therefore, bound to serve the public on reasonable terms, with impartiality. They are almost always endowed with the right to appropriate private property, presumptively upon the theory that such corporations are *quasi*-public servants, as their business is one in which the public has a direct and positive interest.

The plaintiff claims that the defendant should be considered to be under a duty similar to that of the companies referred to. This claim will not meet with sanction here. The defendant is a private corporation. It exercises no franchises which clothe it in the premises with any public duty. It is under no duty to offer stakes or purses, and if in the transaction of its business, it has seen fit to offer these as inducements through which to further its business, it is its own way of transacting its own business for its own private ends. It does not appear that it has ever held itself out for public service, any more than is done by a bank or an insurance company. It may choose its own customers, and may do, or refuse to do, any particular business offered it.

With respect to the class of corporations of which those first mentioned form a part, it may be said, that it has long been the policy of our states to encourage the formation of private companies for the construction and maintenance of highways, railroads, canals, bridges, telegraph lines, water works or gas works, by granting valuable franchises or public bounties, or

both, in their aid, and these grants have been of funds or property, the right to receive municipal aid, subscriptions for shares, a delegation of the power of eminent domain, and exemption from taxation or a monopoly, and in each instance, the acceptance of the grant of the public aid implies an assumption by the grantee of an obligation in favor of the the public; for instance, on the part of a railroad company, " an obligation to maintain its roads as a thoroughfare for the use of the public." In fact it may be laid down as a general rule, that whenever the aid of the government is granted to a private company in the form of a monopoly, or a donation of public property or funds, or a delegation of the power of eminent domain, the grant is subject to an implied condition that the company shall assume an obligation to fulfill the public purpose on account of which the grant was made. See Morawetz Corp. § 1114 et seq.

It is alleged in the complaint that the defendant has granted to it by the state the right to make and register bets and sell pools on the result of its races, and it is argued that this right imposes upon the defendant the fulfillment of a public duty, and that the acceptance of an entry of a horse to a race is one of the public duties which the defendant is obligated to fulfill within reasonable limitations. There is no grant of state aid to the defendant. The right to register bets and sell pools exists at common law and is only taken away in this state by statute. The prohibition of the statute is merely removed from those racing associations during certain periods. In allowing the defendant to sell pools there is no more a grant of state aid than there would be to a tavern keeper if certain prohibitions of the excise law were repealed or modified so as to be more favorable to the seller.

The judgment must be reversed and judgment rendered in favor of the defendant upon the demurrer, with costs.

SEDGWICK, Ch. J., concurs.

Judgment reversed, and judgment for defendant upon the demurrer.