(120 App. Div. 484)

PEOPLE ex rel. EMPIRE CITY TROTTING CLUB v. STATE RACING COMMISSION et al.

(Supreme Court, Appellate Division, Second Department. June 14, 1907.)

1. MANDAMUS—PUBLIC BOARDS—MATTERS OF DISCRETION—GRANT OF LICENSE—STATUTES.

  Laws 1895, p. 373, c. 570, § 6, providing that any corporation or association desiring to obtain the benefits of section 3 of this act may annually apply to the state racing commission for a license to conduct running races or steeplechases, and if, in the judgment of the commission, a proper case for the issuance of the license is shown, it may grant the license, when considered in connection with section 3 thereof, providing that any corporation formed under the provisions of the act, if so claimed in its certificate of organization, and if it comply with all the provisions of the act, shall have the power to hold one or more trotting or running race meetings in each year, and Laws 1902, p. 678, c. 257, § 1, amending the above act, and providing that no certificate of incorporation wherein the right to conduct running races is claimed shall be filed without the approval of the state racing commission, and the title to Laws 1895, p. 370, c. 570, which is "An act for the incorporation of associations for the improvement of the breed of horses and to regulate the same and to establish a state racing commission," does not confer on the commission an absolute discretion in the matter of granting or refusing a license to an association, regardless of the fact that it possesses the requisite statutory qualifications to make it competent to receive one; and hence mandamus will lie to compel the granting of a license by the commission.

  [Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, §§ 39, 134, 189.]

2. SAME.

  The power in the matter of granting or refusing licenses to any association to conduct race courses, given to the state racing commission under

Laws 1895, p. 373, c. 570, § 6, is not affected by section 7 thereof, empowering the commission to revoke a license granted, on the failure of the association to comply with the provisions of the act or the terms of the license, or for any other reason, whereby the continuance of the license is not deemed conducive to the interests of legitimate racing, upon the complaint of the Jockey Club or the National Steeple Chase Association, since this relates only to powers of revocation.

Hirschberg, P. J., dissenting.

Appeal from Special Term.

Mandamus by the people, on the relation of the Empire City Trotting Club, against the state racing commission and others, to compel the defendants to issue to the relator a license to conduct racing. From an order denying the writ (103 N. Y. Supp. 955), relator appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

James Russell Soley (Francis A. Winslow and Frank S. Angell, on the brief), for appellant.

Franklin Bartlett (Welton C. Percy, on the brief), for the respondents.

WOODWARD, J.   The relator seeks a peremptory mandamus directing the state racing commission to issue a license to conduct running races and steeplechases and steeplechase meetings for the year 1907, and the learned court at Special Term has denied the application, on the ground that under the provisions of chapter 570, p. 370, of the Laws of 1895, commonly known as the "Racing Law," the said state racing commission is vested with an absolute discretion in the matter of granting or refusing a license to an association possessing the statutory qualifications to make it competent to receive such license. The appeal of the relator brings up this single question as to the proper construction of the statute, for the learned court at Special Term has fully disposed of all of the incidental questions in harmony with the relator's contention.

We are persuaded, however, that the court has erred in its construction of the statute; that the words of section 6 of the act, suggesting discretion in the commission, are not to be given the extensive meaning attributed to them. We might reach this conclusion from the broad fact that the Legislature may not be presumed to have enacted legislation of a general character in response to a public demand, and then left it to the arbitrary determination of a commission, over which it has no control, to determine arbitrarily whether the law shall have any active force. If the construction put upon it by the learned court at Special Term is the correct one, then it is within the power of a commission with a five-year term of office for its members to prevent all running or steeplechase races within the state of New York during that period, though millions of dollars have been expended in good faith upon the theory that the various racing associations had, what the statute says they shall have:

"The power and right to hold one or more trotting or running race meetings in each year and to hold, maintain and conduct trotting or running races at such meetings." Section 3.

This provision of the statute, it seems to us, is the dominating provision, the active force, of the legislation. The avowed purpose of the legislation is "An act for the incorporation of associations for the improvement of the breed of horses and to regulate the same and to establish a state racing commission," and all of the provisions of the act, in so far as it relates to the improvement of the breed of horses, could have been attained under the general corporation laws of this state, except in the matter of providing for races. Every intelligent man knows the purpose of this legislation. Its primary object was not to form associations for the improvement of the breed of horses, in the sense that that term would be ordinarily employed, but was to permit of forming associations for the purpose of conducting race meetings under the provisions of section 3 and those following it; it being assumed that the interest thus maintained in finely bred horses would produce the contemplated improvement in the breed of horses. It was not to organize breeding associations. These could have been formed under the general laws quite as well. But it was to promote the creation of racing associations for the indirect encouragement of high breeding, and it is not to be presumed that an act of legislation, exciting the discussion which this measure brought forth in the public press at the time, was designed to be inoperative at the caprice of three commissioners, or that it was intended to vest in such commissioners an arbitrary power to promote or ruin any of these creations of the state.

It has never been the policy of this state, so far as we are able to discover, to create corporations requiring large investments of capital, and then to leave such corporations to the mercy of a commission, owing no obligations to such corporations; and, until such a purpose is clearly indicated by the Legislature itself, the courts ought not to give such powers by construction. It may be safely assumed that when the Legislature provided for the formation of such corporations, and in its third section provided that "any corporation formed under the provisions of this act, if so claimed in its certificate of organization, and if it shall comply with all the provisions of this act, * * * shall have the power and right to hold one or more trotting or running race meetings in each year, and to hold, maintain and conduct trotting or running races at such meetings," it intended to give this right to the corporation. When a power and a right is specifically given to an individual or a corporation, everything incident to the enjoyment of that power and right must be granted by necessary implication, unless the act itself denies the same; for it is a rule of universal application that the greater contains the less. Broom's Legal Maxims (4th Am. Ed.) 141.

When we look into the act for any lessening of this power and right, where is it to be found? The learned Special Term suggests that it is found in the provisions of section 6 of the act; but we do not find that the Legislature has taken away the power and the right. It has simply provided for a license, which always contemplates, not a denial of a right or power, but the regulation of such right or power. A license, such as is contemplated by the statute, is a permission to do something under regulations, and not a prohibition. The provisions of the section clearly indicate this. It is provided that:

"Any corporation or association desiring to obtain the benefits of the provisions of section 3 of this act, if proposing to conduct a race course or race meeting for running races or steeplechases, may annually apply to the state racing commission for a license to conduct running races and race meetings or steeplechases and steeplechase meetings, as the case may be. If, in the judgment of such commission a proper case for the issuance of such license is shown, it may grant such license, for a term of one year."

It is then provided that every such license shall contain a provision that the running races, etc., shall be subject to the reasonable rules and regulations of the Jockey Club, a corporation organized under the laws of this state, and that the steeplechase meetings shall be subject to the reasonable rules and regulations of the National Steeplechase Association, and it is likewise provided that any of these rules or regulations shall be liable to be abrogated or modified by the state racing commission, on giving the two corporations an opportunity to be heard. It is entirely clear, therefore, that the licensing provision was not intended to vest in the commission a power to prohibit the exercise of a power and right which was granted to the corporation; but a power to regulate the exercise of the power and right by means of the license brings the association within the control of the reasonable rules and regulations of the Jockey Club and the National Steeplechase Association, with a right on the part of the commission to modify or abrogate such rules. The fact that there must be an annual application makes for the construction that the provision is of a visitorial or of a regulative character. The discretion vested in the commissioners is not to take into consideration what powers and rights the corporation shall have—these are given by the statute itself, and vest upon the organization of the corporation as provided—but to determine whether the corporation has complied with the provisions of the statute and thereby become vested with the power and right to conduct the race meetings. No license is required for the trotting races. It is only when running races or steeplechases are to be held that the license is required, and the primary purpose of the license is to bring the races within the rules of the two corporations mentioned. It is to regulate the exercise of the power and right which belongs to the corporation, and the only justification for denying this license must be found in the fact that the applicant has failed to show a "proper case for the issuance of such license"; and a "proper case" does not require the applicant to show that there are no other races to be held within 200 miles of its tracks, or any of the various considerations which might appeal to the reason, prejudices, special interests, passions, or other motives of the individual members of the commission. Their judgment as to a proper case is confined to the consideration of the questions involved in the organization of the corporation as required by the statute; and if the applicant is shown to have complied with all of the conditions necessary to vest in it the "power and right to hold one or more trotting or running race meetings in each year, and to hold, maintain and conduct trotting or running races at such meetings," then it is the duty to issue the license necessary to bring the corporation within the governing rules prescribed. This view gives meaning to all parts of the statute, carries out the legislative intent,

and does equal justice between all corporations organized under the laws of this state, and which have naturally an equal right to all of the privileges.

Nor is this view of the question disturbed by the provisions of section 7. It is one thing to hold that a corporation, vested with certain definite powers and rights, is entitled to a license when such license is necessary to the enjoyment of those powers and rights, and quite another to suggest that the state has not a right to provide for the annulment of such license, whenever a proper state of facts exists. In the first instance the corporation is only obliged to show that it has complied with all the provisions of the law to entitle it to the power and right. From that moment it has the right to all incidental matters necessary to enable it to exercise those powers; for it cannot be presumed that a corporation, more than an individual, will disobey the law or disregard the reasonable rules and regulations prescribed by the license. Section 7 recognizes the right of the corporation to a license whenever it has complied with the law; but it provides for a case in which the corporation has violated the law, or done something inimical to the "interests of legitimate racing," and the power to revoke a license is carefully limited, and the statute clearly contemplates a quasi judicial trial, after a complaint on the part of the Jockey Club or the Steeplechase Association, before the corporation may be deprived of its rights under section 3 of the act. Of course, if a corporation properly organized insists upon disregarding the law of its being, or violates the reasonable provisions of its license, or disregards the obligations of honesty and fair dealing with the public to which it caters in such a way as to defeat the purposes of the law, as suggested in the case of Grannan v. Westchester Racing Ass'n, 153 N. Y. 442, 47 N. E. 896, it would not only forfeit its rights under the license, but it would be entirely proper that the Legislature should provide, as it has done, that it forfeit all rights under section 3 of the act; but this is no reason why we should hold that the commissioners should presume that the corporation would do any of these things, and refuse in advance the license necessary to enable the corporation to serve the very purposes of its existence.

If the construction was open to any possible question in the original act, it seems to us clear that this has been put at rest by the Legislature by its enactment of chapter 257, p. 678, of the Laws of 1902, section 1 of which provides, among other things, in amending the original act, that:

"No certificate of incorporation under this section, wherein the right to conduct running or steeplechase race meetings is claimed, shall hereafter be filed without the approval of the state racing commission endorsed thereon or annexed thereto, stating that, in its opinion, the purposes of this act and the public interests will be prompted by such incorporation, and that such incorporation will be conducive to the interests of legitimate rac'ng."

If the commissioners already had the power to determine upon the right of a corporation organized under this act to have a license, it was obviously unnecessary to enact this provision. But the truth is the commission never had any discretionary powers in reference to a corporation properly organized. Its judgment related purely to the

sufficiency of the acts constituting the corporation, and not to considerations of public or private policy, such as the commission urges in the matter now before us.

The order appealed from should be reversed, and the prayer of the relator should be granted.

Order reversed, with $10 costs and disbursements, and motion granted, with costs.

JENKS, HOOKER, and MILLER, JJ., concur. HIRSCHBERG, P. J., votes to affirm on the opinion of Mr. Justice Mills at Special Term.