COLEMAN F. MADDEN, Appellant, *v.* QUEENS COUNTY JOCKEY CLUB, INC., Respondent.

Argued January 9, 1947; decided April 17, 1947.

**250**

*Raphael H. Weissman* for appellant. I. The license to conduct horse racing is a license or franchise to perform a public or quasi public purpose. (*People* v. *Holstein-Friesian Assn.,* 41 Hun 439; *People ex rel. Burnham* v. *Flynn,* 189 N. Y. 180; *Woollcott* v. *Shubert,* 217 N. Y. 212; *Corrigan* v. *Coney Island Jockey Club,* 2 Misc. 512; *Grannan* v. *Westchester Racing Assn.,* 16 App. Div. 8, 153 N. Y. 449; *People ex rel. Empire City Trotting Club* v. *State Racing Comm.,* 120 App. Div. 484, 190 N. Y. 31.) II. The license to conduct pari-mutuel betting rendered defendant an administrative agent of the State in the execution of the law. (*Aliano* v. *Westchester Racing Assn.,* 265 App. Div. 225.) III. As licensee to perform a public or quasi public purpose and as administrative agent under the Pari-Mutuel Law, defendant was under like obligation as the State to

accord plaintiff equal accommodation as an aspect of the constitutional guarantee of equal protection of the laws. (*Nixon* v. *Condon,* 286 U. S. 73; *Kerr* v. *Enoch Pratt Free Library of Baltimore City,* 149 F. 2d 212.) IV. Founded upon the constitutional guarantee of equal protection of the laws, plaintiff's right of equal accommodation requires no statutory sanction and, therefore, it does not derogate from the plaintiff's right that the Legislature has not seen fit to provide, as to race courses, that the public be admitted without discrimination. (*Boyce* v. *Greeley Square Hotel Co.,* 228 N. Y. 106; *Morningstar* v. *Lafayette Hotel Co.,* 211 N. Y. 465; *Matter of Doyle,* 257 N. Y. 244; *Northern Securities Co.* v. *United States,* 193 U. S. 197.)

*Conrad Saxe Keyes, Cyrus S. Jullien* and *Joseph B. Cavallaro* for respondent. I. The complaint fails to state facts sufficient to constitute a cause of action. Failure to allege that the plaintiff was excluded by reason of race, creed or color renders the complaint insufficient. Plaintiff has no legal right or privilege of attending the races or participating in pari-mutuel betting at the race track of the defendant. II. The proprietor of a place of amusement, in the absence of legislation to the contrary, has a right to exclude any person from such place of amusement provided he does not discriminate upon the grounds of race, creed or color. (*Madden* v. *Queens County Jockey Club, Inc.,* 175 Misc. 522; *Grannan* v. *Westchester Racing Assn.,* 153 N. Y. 449; *Aaron* v. *Ward,* 203 N. Y. 351; *Woollcott* v. *Shubert,* 217 N. Y. 212; *Collister* v. *Hayman,* 183 N. Y. 250; *People ex rel. Burnham* v. *Flynn,* 189 N. Y. 180.) III. The common-law right of exclusion from places of amusement continues until changed by specific legislation. (*Christie* v. *46th St. Theatre Corp.,* 265 App. Div. 255, 292 N. Y. 520.) IV. No limitation of the right of race tracks to exclude has been enacted. V. There is a common-law right to exclude in the absence of restrictive legislation. (*Western Turf Association* v. *Greenberg,* 204 U. S. 359; *Marrone* v. *Washington Jockey Club,* 227 U. S. 633; *Levine* v. *Brooklyn National League Baseball Club,* 179 Misc. 22; *Mandel* v. *Brooklyn National League Baseball Club,* 179 Misc. 27.) VI. A race track is not a public utility. (*Buder* v. *First National Bank,* 16 F. 2d 990; *Pulitzer Pub. Co.*

v. *Federal Communications Commission,* 94 F. 2d 249; *Davies Warehouse Co.* v. *Brown,* 137 F. 2d 201; *Bradley* v. *Degnan Construction Co.,* 224 N. Y. 60; *People* v. *Budd,* 117 N. Y. 1.) VII. Licenses are not franchises. (*Lord* v. *Equitable Life Assurance Society,* 194 N. Y. 212; *Trustees of Southampton* v. *Jessup,* 162 N. Y. 122; *Eighth Ave. Coach Corp.* v. *City of New York,* 286 N. Y. 84; *People* v. *O'Brien,* 111 N. Y. 1.) VIII. The Pari-Mutuel Law does not create a public utility. (*Chapin* v. *Austin,* 165 Misc. 414; *Corrigan* v. *Coney Island Jockey Club,* 2 Misc. 512.) IX. There is no standard for the limitation of the right of defendant to exclude. (*Aaron* v. *Ward,* 203 N. Y. 351; *Frost* v. *Pinkerton,* 61 App. Div. 566.)

*Martin A. Schenck, Harold C. McCollom* and *Kenneth W. Greenawalt* for Westchester Racing Association, The Saratoga Association, Metropolitan Jockey Club and Empire City Racing Association, *amici curiæ,* in support of respondent's position. I. The complaint is insufficient and was properly dismissed. (*Harbison* v. *Propper,* 112 Misc. 588; *Marrone* v. *Washington Jockey Club,* 227 U. S. 633; *Corrigan* v. *Coney Island Jockey Club,* 2 Misc. 512; *Gerdes* v. *Reynolds,* 281 N. Y. 180; *Weinberger* v. *Quinn,* 264 App. Div. 405; *Davis* v. *Cohn,* 260 App. Div. 624; *Lifshutz* v. *Adams,* 285 N. Y. 180; *Kalmanash* v. *Smith,* 291 N. Y. 142; *Oshrin* v. *Celanese Corporation of America,* 291 N. Y. 170; *Reed* v. *Littleton,* 275 N. Y. 150; *Schieffelin* v. *Komfort,* 212 N. Y. 520.) II. The Pari-Mutuel Law emphasizes the importance of defendant's right to exclude without expressing a reason. (*People ex rel. Lichtenstein* v. *Langan,* 196 N. Y. 260; *People* v. *Carpenito,* 292 N. Y. 498; *Watts* v. *Malatesta,* 262 N. Y. 80; *Bamman* v. *Erickson,* 288 N. Y. 133; *Hofferman* v. *Simmons,* 290 N. Y. 449; *Aliano* v. *Westchester Racing Assn.,* 265 App. Div. 225; *Holberg* v. *Westchester Racing Assn.,* 184 Misc. 581; *Matter of Stewart* v. *Department of State,* 174 Misc. 902, 260 App. Div. 979.) III. The Pari-Mutuel Law has not changed the long-recognized rule that the plaintiff's right to attend defendant's race course is a qualified right. (*Grannan* v. *Westchester Racing Assn.,* 153 N. Y. 449; *Madden* v. *Queens County Jockey Club, Inc.,* 175 Misc. 552; *Woollcott* v. *Shubert,* 217 N. Y. 212.) IV. The Legislature has intended not to give the general public any unqualified **right to enter race tracks and bet at pari-mutuels.**

FULD, J. " Owney " Madden was named by one Frank Costello in 1943 as a bookmaker with whom he placed bets. " Coley " Madden, plaintiff herein, a self-styled " patron of the races ", was barred by defendant from its Aqueduct Race Track in 1945, under the mistaken belief that he was Costello's bookmaker. Plaintiff thereupon sought a declaratory judgment declaring that he has a right, as citizen and taxpayer — upon paying the required admission price — to enter the race course and patronize the pari-mutuel betting there conducted. Defendant, on the other hand, asserted an unlimited power of exclusion. Special Term, finding that plaintiff was a citizen of good repute and standing, decided that the complaint stated a cause of action and entered an order enjoining defendant from keeping plaintiff off the race track. The Appellate Division, reversing, dismissed the complaint.

The question posed — which this court explicitly declined to consider in 1897, in *Grannan* v. *Westchester Racing Assn.* (153 N. Y. 449, 459) — is whether the operator of a race track can, without reason or sufficient excuse, exclude a person from attending its races. In our opinion he can; he has the power to admit as spectators only those whom he may select, and to exclude others solely of his own volition, as long as the exclusion is not founded on race, creed, color or national origin.

At common law, a person engaged in a public calling, such as innkeeper or common carrier, was held to be under a duty to the general public and was obliged to serve, without discrimination, all who sought service. (See e.g., *People* v. *King*, 110 N. Y. 418, 427; see, also, Wyman, Public Callings and The Trust Problem, 17 Harv. L. Rev. 156, 217.) On the other hand, proprietors of private enterprises, such as places of amusement and resort, were under no such obligation, enjoying an absolute power to serve whom they pleased. (See, e.g., *Woollcott* v. *Shubert*, 217 N. Y. 212; *Aaron* v. *Ward*, 203 N. Y. 351; *People ex rel. Burnham* v. *Flynn*, 189 N. Y. 180; *Collister* v. *Hayman*, 183 N. Y. 250.) A race track, of course, falls within that classification. (See *Marrone* v. *Washington Jockey Club*, 227 U. S. 633; [*Edward J.*] *Madden* v. *Queens County Jockey Club, Inc.*, 175 Misc. 522; *Corrigan* v. *Coney Island Jockey Club*, 2 Misc. 512.)

The common-law power of exclusion, noted above, continues until changed by legislative enactment. In this State, a statute — explicitly covering " race courses " — limits the power by prohibiting discrimination on account of race, creed, color, or national origin. (Civil Rights Law, § 40; see, also, Penal Law, §§ 514, 700.) That, then, is the measure of the restriction.

Plaintiff, however, asserts a right founded upon the constitutional guaranty of equal protection of the laws. The argument is based on two assumptions, first, that the license to conduct pari-mutuel betting constitutes the licensee an administrative agent of the State in the execution of the law, and, second, that the license to conduct horse racing is a franchise to perform a public purpose.

The first assumption is quickly disposed of. Section 9 of the Pari-Mutuel Revenue Law (L. 1940, ch. 254, § 9, as amd. by L. 1946, ch. 339, § 1) provides in substance that the licensee shall retain 10% of the total deposits and pay therefrom " to the state tax commission as a reasonable tax by the state for the privilege of conducting pari-mutuel betting ", an amount equal to a certain percentage of the total pool. It should be noted that the tax is thus imposed not on the bettor for the privilege of *betting* — analogous to the imposition of a sales tax upon the purchaser from a retail store — but upon the licensee for the privilege of *conducting* pari-mutuel betting. Adopting plaintiff's position, it would be equally valid to argue that every licensee, theatre manager, cab driver, barber, liquor dealer, dog owner — to mention a few — must be regarded as " an administrative agency of the state " in the conduct of his everyday business simply because he pays a tax or fee for his license.

Plaintiff's second assumption — that the license is a franchise — requires more lengthy treatment. There is little need to cite authority for the proposition that a race track is normally considered a place of amusement and that — with the possible exception of ancient Rome — amusement of the populace has never been regarded as a function or purpose of government. Horse racing does not become a function of government merely because, in sanctioning it, the Legislature anticipated a consequent, though incidental, advantage to the public in " improving the breed of horses ". (L. 1926, ch. 440, § 1; cf. *People ex rel. Empire City Trotting Club* v. *State Racing Comm.,*

120 App. Div. 484, 485–486, affd. 190 N. Y. 31.) There is, then, nothing inherent in the nature of horse racing which makes operation of a race track the performance of a public function. If plaintiff's assumption were valid, it would follow that the mere fact of licensing makes the purpose a public one and the license in effect a franchise. Such, however, is not the law. (*Woollcott* v. *Shubert, supra,* p. 216; *Collister* v. *Hayman, supra,* p. 253.)

Plaintiff's argument results from confusion between a " license ", imposed for the purpose of regulation or revenue, and a " franchise ". A franchise is a special privilege, conferred by the State on an individual, which does not belong to the individual as a matter of common right. (See *Smith* v. *The Mayor,* 68 N. Y. 552, 555; *Matter of Penn-York Natural Gas Corp.* v. *Maltbie,* 164 Misc. 569, 573; *City of Tulsa* v. *Southwestern Bell Telephone Co.,* 75 F. 2d 343, 350.) It creates a privilege where none existed before, its primary object being to promote the public welfare. (See e.g., *Southern Ry. Co.* v. *South Carolina Public Service Comm.,* 31 F. Supp. 707, 711; *City of Oakland* v. *Hogan,* 41 Cal. App. 2d 333, 347.) A familiar illustration is the right to use the public streets for the purpose of maintaining and operating railroads, waterworks and electric light, gas and power lines.

A license, on the other hand, is no more than a permission to exercise a pre-existing right or privilege which has been subjected to regulation in the interest of the public welfare. The grant of a license to promote the public good, in and of itself, however, makes neither the purpose a public one nor the license a franchise, neither renders the enterprise public nor places the licensee under obligation to the public. (*Woollcott* v. *Shubert, supra; Collister* v. *Hayman, supra.*) In the *Woollcott* case (*supra*) for instance, where the power of a theatre owner to bar a critic from his theatre was upheld, this court wrote (217 N. Y., at p. 216): " At the common law a theatre, while affected by a public interest which justified licensing under the police power or for the purpose of revenue, is in no sense public property or a public enterprise. * * * The proprietor does not derive from the state the franchise to initiate and conduct it. His right to and control of it is the same as

that of any private citizen in his property and affairs. He has the right to decide who shall be admitted or excluded." Likewise, race tracks may well be affected with a public interest sufficient to justify governmental licensing or other regulation. Recognition of a public interest, however, is neither recognition nor acknowledgment that the State is a partner in the business of horse racing or that the race track operator is the State's administrative agent to collect revenue.

Observing, however, that the conduct of races for stakes had long been declared illegal " except as specially authorized ", plaintiff argues from that that the license was in effect a franchise, since it granted a privilege not previously enjoyed by common right. That, though, overlooks the fact that the privilege of conducting horse races for stakes does exist at the common law, that it is taken away only by statute, and that the statute's prohibition is removed only under certain circumstances and upon compliance with specified conditions. (See *Corrigan* v. *Coney Island Jockey Club, supra;* cf. *Marrone* v. *Washington Jockey Club, supra; Western Turf Association* v. *Greenberg,* 204 U. S. 359.) Consequently, the license, instead of creating a privilege, merely permits the exercise of one restricted and regulated by statute.

In short, plaintiff's asserted right to admittance must rest either upon common law or upon statutory provision. No such right existed at common law and the Legislature has not chosen to create one. (Civil Rights Law, §§ 40, 40-b.)

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

Judgment affirmed.