In the Matter of CHRIS CHRISTENSEN, Petitioner, against JULIUS HELFAND et al., Constituting the New York State Athletic Commission, et al., Respondents.

Supreme Court, Special Term, New York County, July 18, 1955.

*Peter A. Luria* for petitioner.

*John J. De Luca* for New York State Athletic Commission, respondent.

MARTIN M. FRANK, J. This is an article 78 proceeding by which the petitioner seeks to vacate a determination of the New York State Athletic Commission, disapproving an alleged contract to hold a boxing exhibition on July 25, 1955, in which the petitioner was to be a participant. In addition, relief is sought directing the approval of the claimed contract.

Preliminarily it is urged by the respondents that the petitioner has no standing as a proper party. With that contention, we cannot agree. We believe that a professional boxer, who may be prevented from earning a livelihood by the refusal of the State agency to grant him a license or to approve a contract, has a sufficient interest to permit him to seek a review of the actions of the agency. The commission does perform quasi-judicial functions (*Matter of Lewis* v. *Phelan,* Sup. Ct., New York Co., 1938, NOONAN, J., affd. 255 App. Div. 959) and its acts are therefore subject to judicial review.

Professional boxing bouts with admission charges were lawful at common law. The abuses attendant thereon brought statutory prohibition of such contests. In 1920 boxing exhibitions were revived under strict regulation by the commission. The commission has the power to inquire into the conduct of those who hold or apply for licenses. It must exercise its authority to prevent monopolistic combinations which seek to attain a strangle hold on the sport to the detriment of the boxers and the public which maintains it. It has the obligation to protect boxers and others in the profession, and the public from the unscrupulous and the venal, who from time to time infiltrate its ranks. The rules here involved are a part of the regulatory pattern designed to effectuate the governmental purpose.

The conduct of boxing matches or exhibitions is not an unrestrained right. By section 6 of chapter 912 of the Laws of

1920 (as last amd. by L. 1953, ch. 137), the respondent commission " is vested with the sole direction, management, control and jurisdiction over all such boxing * * * matches * * * to be conducted * * * within the state of New York.'' The section likewise places sole control in the agency over all licenses to hold such exhibitions and of licenses to be issued to boxers, managers, promoters and matchmakers, among others. These persons are deemed guilty of a misdemeanor if they arrange for or participate in boxing contests without appropriate licenses (L. 1920, ch. 912, § 27, renum. § 33 by L. 1952, ch. 666).

The petitioner, a professional boxer, contends that on or about June 21, 1955, he entered into a contract with London S. C. Inc., a duly licensed boxing club, for a match to be held at the St. Nicholas Arena, between one Gene Poirer and himself, and that all of the persons involved as fighters, managers and promoters were duly licensed. He alleges, and it is not disputed, that his manager was one Charles Bauer, whose license was suspended on June 27, 1955.

Christensen contends that as a result of his manager's suspension, the commission advised the matchmaker to obtain a substitute boxer for the petitioner. It is the fact that the commission has refused to approve the contract for the boxing contest signed by the petitioner.

Charles Bauer's license as a manager was suspended effective June 27, 1955, because of his willful refusal to testify before the commission in its inquiry into irregularities in the conduct of boxing in this State. No question was raised with respect to the commission's authority to conduct the investigation or to suspend a license in a proper case. Both the petition and the supporting affidavit of Bauer admit that he refused to testify with respect to the affairs of the Boxing Managers Guild. The papers do not disclose that any action has been taken by Bauer to remove or revoke the suspension.

The commission asserts by affidavit that Tex Sullivan, the matchmaker, on July 6, 1955, admitted that at the time the contract was signed he knew that Bauer had been suspended. If that be the fact, the document in question could not have been executed on June 21st but only after June 27th. It is significant that although the petitioner was given time to reply to the affidavit made by the chairman of the commission, there is no categorical denial of this statement that the contract was signed after Bauer's suspension. The petition merely recites that the contract was signed '' on or about June 21st ''. Bauer's affidavit carefully avoids fixing the exact date of the execution of the

instrument and refers to it as " the contract of June 21st ". No affidavit specifying the precise date when it was signed was submitted by Sullivan or any other person present at that time.

The commission contends that the contract is a nullity because it violates subdivision 10 of rule I of its rules and regulations as amended to March 13, 1953 (N. Y. Official Compilation of Codes, Rules & Regulations [8th Supp.], p. 546). The provision prohibits a promoter from entering into a contract with a manager or boxer if the license of such boxer or manager has been suspended or revoked.

Subdivision 13 of rule B (p. 532) requires that a contract must be filed with the commission within forty-eight hours after its execution. The agreement in question was not filed until July 4, 1955.

The failure to file before July 4th, the absence of Bauer's signature on the contract, the careful avoidance to fix the exact date of its execution in the papers submitted in support of the instant application, the failure to deny the unequivocal statement under oath of the chairman of the agency that the contract was executed after Bauer's suspension require the finding that the contract was entered into after the suspension of Bauer's license and is, therefore, violative of the commission's regulations.

While at first blush it may appear that the refusal of the commission to sanction the match deprives the petitioner of an opportunity to derive income and profit from his profession, it must be borne in mind that the practice of the profession of boxing, like some others more mentally than physically exhausting, such as law and medicine, is not an unqualified right but a privilege subject to license (cf. *Madden* v. *Queens Co. Jockey Club,* 296 N. Y. 249; *Eboli* v. *Christenberry,* 114 N. Y. S. 2d 311).

The rules and regulations to which reference has been made are not an unreasonable exercise of the functions assigned to the New York State Athletic Commission. A contract in contravention of rules similar to those discussed here was held to be illegal and unenforcible (*Baksi* v. *Wallman,* 62 N. Y. S. 2d 26, mod. 271 App. Div. 422, affd. 297 N. Y. 456). Since it has been found that the subject agreement was executed after the suspension of petitioner's manager, it must be held to be violative of the commission's requirements. The refusal of the commission to approve the contract and to sanction the bout is, therefore, within the scope of its authority.

The determination of the New York State Athletic Commission is neither unreasonable, capricious nor arbitrary. The application is denied and the petition dismissed.

Order signed.