Alexander Berman, J.
The petitioner, in this article 78 proceeding, seeks to annul and prevent enforcement of a directive made by the respondent, New York Racing Association, Inc., hereinafter referred to as NYRA, which bars him from entering and remaining upon any racetrack owned by the respondent, including Saratoga, Belmont and Aqueduct. The respondent opposes the application and seeks dismissal of the proceedings.
Petitioner contends that the order barring him from the racetracks is arbitrary and capricious and in violation of his constitutional rights to due process guaranteed by the Fifth Amendment. Respondent contends on the other hand that it is a private organization organized in 1955 under chapter 812 of the Laws of 1955 (Horse Racing Act), and that as such private organization it has the common-law right to admit to *243 the tracks only those whom it selects, and to exclude others solely on its own judgment, as long as the exclusion is not founded on race, creed, color, or national origin. Furthermore, it contends that it is under an obligation under the rules of the New York State Racing Commission to do so. In this connection, it points out the regulation which provides as follows: “ [Undesirable persons to be ejected.] No person * * * whose conduct at a race track in New York or elsewhere, is or has been improper, obnoxious, unbecoming or detrimental to the best interests of racing, shall enter or remain upon the premises of any licensed association conducting a race meeting under the jurisdiction of the commission; and all such persons shall upon discovery or recognition be forthwith ejected.” (19 NYCRR 4.46.)
NYRA submits, in support of its obligation and conclusion to keep this petitioner away from the track, material contained in orders of suspension made by the New York State Racing Commission which is based upon determinations by that commission to the effect, inter alia, that one Robert Prestí, also known as Nicholas Spadea, also known as Ralph R. Li Butti, conspired with certain licensed horse trainers to enter in races horses owned by said Prestí under the guise that they were actually owned by some other persons. It is conceded by the respondent that Prestí was not a party to the proceedings before the commission which resulted in this determination.' However, it contends that the information referred to is sufficient to warrant banning petitioner from their tracks. The petitioner, in response to these allegations, submits an affidavit by an uncle who claims that he is the person referred to in the orders of suspension and not his nephew, the petitioner herein. Petitioner denies that he was ever convicted of any crime and states, 1 ‘ there is no conceivable or rational reason set forth to exclude the petitioner ’ ’.
Petitioner is in the business of buying and selling race horses and therefore, he contends, it is necessary for him to observe race horses in action at the various tracks in order to make a competent judgment with regard to buying or selling, and that his exclusion from these tracks is depriving him not only of his rights as an ordinary citizen, but his right to conduct business, and therefore, deprives him of property without compensation, in violation of his constitutional rights.
The first question posed is whether NYRA has the absolute right to arbitrarily exclude anyone from its premises. The petitioner claims that it does, and cites the landmark case of *244 Madden v. Queens County Jockey Club (296 N. Y. 249) in "which the court in a unanimous opinion so held. This decision has been followed through the years in a number of cases, including a rather recent one (People v. Licata, 28 N Y 2d 113) in which the court cited the Madden case and restated the proposition that NYRA had the right to exclude anyone whom it deemed objectionable, the court saying (pp. 116-117): “ The responsibility to screen patrons and to exclude or expel any undesirable person lies exclusively with the track protective bureau who had issued the original ‘ not to enter ’ order.
‘ ‘ Relevant policy, considerations would also seem to weigh heavily in the result we reach. The State Racing Commission regulation (19 NYCRR 4.46) is explicit that ‘ No person who is known or reputed to be a bookmaker * * * shall enter * * * upon the premises of any licensed * * * race meeting ’. (Emphasis added.) To hold that the sale of a ticket revokes an existing, lawful order ‘ not to enter’, would prevent effective enforcement of the commission’s regulation barring certain undesirable persons from race tracks. Under such an interpretation, an undesirable person would never be subject to criminal prosecution, for violating the 1 not to enter1’ order, but would merely risk expulsion from the race track upon discovery on the premises. This, in our view, would place an unreasonable burden upon the track officials in enforcing a reasonable and desirable policy of our State.
“In short, defendant was guilty of criminal trespass when he entered the track premises with knowledge that he was not 1 licensed or privileged to do so.’ ”
The Madden case and .the Licata case (supra) seem' now, however, not to be controlling on this proposition, according to the Appellate Division, Second Department, in its decision of March 5, 1973, hereinafter referred to, in which it points to a difference in the status of NYRA now as against its status at the time of the Madden case, decided in 1947. It states that NYRA now is operating a franchise granted by the State, whereas at the time of the Madden case it was only a licensee by virtue of the then existing statutes. The court said: “ The appellant now owns and operates Aqueduct Race Track (which is the place from which the patron in Madden was excluded) and other racetracks by virtue of statutes adopted in 19.55— some eight years after Madden was decided (see Horse Racing Act, § 7-a; L. 1955, ch. 812, § 2; Pari-Mutuel Revenue Law, § 4-a; L. 1940, ch. 254, as amd. by L. 1955, ch. 813, § 1). Under those statutes the appellant received a franchise good for 25 *245 years to conduct .races with pari-mutuel betting at the Aqueduct, Belmont and Saratoga racetracks. As a nonprofit racing corporation, the appellant must secure the approval of its trustees by the Racing Commission and must dismiss on the request of the Racing Commission any member of its board or executive officer on certain specified grounds (Horse Racing Act, § 1-a, subd. 3; L. 1926, ch. 440, as amd. by L. 1955, ch. 812, § 1). The State receives as a franchise fee all the taxable income of the appellant after provision for the payment of Federal taxes and the amortization of debt contracted with the approval of the Racing Commission (Horse Racing Act, § 7-a; L. 1955, ch. 812, § 2). Upon dissolution of the appellant, its assets must be transferred to one or more exempt organizations defined under the Federal Internal Revenue Code as may be designated by the Governor (Horse Racing Act, § 1-a, subd. 2; L. 1955, ch. 812, § 1). The Racing Commission exercises strict supervisory control over the appellant, including the approval of the acquisition of real property and facilities (Horse Racing Act, § 7-b; L. 1955, ch. 812, § 3), the right to examine its books (Horse Racing Act, § 6-a; L. 1955, ch. 15, § 3; § 7-a; L. 1955, ch. 812, § 2), the appointment of one of the three stewards in charge of the racing (Horse Racing Act, § 9-a; L. 1955, ch. 15, § 5), the power to make rules for the conduct of pari-mutuel betting (Pari-Mutuel Revenue Law, § 7; L. 1940, ch. 254, as amd. by L. 1945, ch. 121, § 1) and the fixation of admission charges (Pari-Mutuel Revenue Law, § 15; L. 1940, ch. 254, as amd. by L. 1955, ch. 58, § 1).” (Jacobson v. New York Racing Assn., 41 A D 2d 87, 89, 90.)
The court finally concluded, in converting an action into qn article 78 proceeding: “ But it is our view that constitutional rights should not rise or fall on the narrow ground of a definition of franchise or license. It is the combined force of the factors establishing State involvement to which we have already referred, together with the terms of the franchise and franchise fee, which convinces us that State action was asserted at the time the appellant barred the respondent from use of its facilities. As the respondent alleges that this was an arbitrary and unjustifiable decision, his complaint is sufficient.” (Jacobson v. New York Racing Assn., supra, p. 93.)
In arriving at this conclusion, the court commented on the Licata case (supra) in which Madden was followed, but points out that the constitutional issue discussed in the Appellate Division was not raised in the Court of Appeals, and was therefore not considered.
*246 Under all of the circumstances, therefore, it follows that while the respondent has an obligation to exclude undesirables from its tracks, its decisions as an instrumentality of the State are subject to review by the courts, which may determine whether same are arbitrary or capricious.
We come now to the question of whether the directive to exclude the petitioner from the racetracks was arbitrary or capricious.. Certainly, the accusation that this petitioner conspired to cause horses to be entered in races under the sponsorship of a person other than the true owner is a serious one. If these charges are true, then NYRA had every right and obligation to exclude him. By the same token, if the accusations are false and without foundation, then the rights of this petitioner have been trampled upon and he has been deprived of his constitutional guarantees.
It is the conclusion of this court that petitioner appears to have been deprived of his constitutional rights without due process and that he is entitled to a hearing on the issues as to whether the decision of NYRA, a quasi-public corporation, as described in Jacobson (supra), in barring him from the racetracks, is arbitrary and capricious. Accordingly, the court directs that such a hearing be held at Special Term, Part HE, on the 10th day of September, 1973, at 10:00 A.m., subject to the Justice presiding. Petitioner shall file a note of issue and statement of readiness within 10 days from this date.
In the meantime, and pending the outcome of such hearing, NYRA is restrained and enjoined from preventing petitioner’s attendance at its racetracks in the area thereof open to the public at Saratoga, Belmont and Aqueduct.
The motion of respondent to dismiss the petition is denied.