WHETZLER, Richard P.

v.

Donald KRAUSE et al.

Civ. A. No. 75–1795.

United States District Court,
E. D. Pennsylvania.

March 31, 1976.

William J. F. Bell, Feasterville, Pa., for plaintiff.

Samuel E. Dennis, Philadelphia, Pa., Harry L. Rossi, Rossi & Casey, Warminster, Pa., for defendants.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

Pending before the Court is plaintiff's motion for preliminary injunctive relief against certain named individuals and certain corporations licensed to conduct horse racing activities in the State of Pennsylvania. At a hearing on said motion, the parties stipulated to many of the facts underlying this controversy. Also pending before the Court is a motion filed jointly on behalf of defendants Donald Krause, Continental Thoroughbred Racing Association, Inc. ("Continental"), Harry L. Rossi, Thoroughbred Racing Protective Bureau and the Thoroughbred Racing Association to dismiss plaintiff's complaint. A similar motion has also been filed jointly on behalf of defendants Eagle Downs Racing Association ("Eagle Downs"), and J. Thomas O'Brien. For the reasons hereinafter set forth, we deny the request for injunctive relief and grant the motions to dismiss as to Counts 1 and 2 of the complaint.[1]

### I. FACTS

Plaintiff's complaint basically alleges that the defendants, while acting under color of state law, have conspired to deprive him of certain constitutional rights by denying him access to certain race tracks after his license as an assistant trainer of thoroughbred race horses was revoked and later reinstated by the Pennsylvania State Horse Racing Commission. The defendants' conduct, plaintiff alleges, constitutes a violation of §§ 1983 and 1985(3) of the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(3). Jurisdiction is properly invoked under 28 U.S.C. §§ 1331, 1343(3), (4).

The defendants are described in the complaint as follows. Defendants Eagle

1. The other counts stated in the complaint, Counts 3 and 4, allege conduct by certain defendants named in this action in regard to thoroughbred racing at the Atlantic City Race Track in New Jersey; however, neither plaintiff's request for injunctive relief nor defendants' motions to dismiss are directed to Counts 3 and 4. Therefore, our determination with respect to the request for injunctive relief and the motions to dismiss are necessarily relegated to Counts 1 and 2; and we have limited our consideration to material in the complaint relevant to Counts 1 and 2 only.

Downs and Continental are private thoroughbred horse racing associations incorporated under the laws of Pennsylvania for the purpose of conducting thoroughbred horse race meetings at which pari-mutuel betting is conducted. It is alleged that both Eagle Downs and Continental are licensed by the Pennsylvania State Horse Racing Commission pursuant to the Act of December 11, 1967, P.L. 707, 15 P.S. § 2657. Defendant Thoroughbred Racing Association is a private corporation organized pursuant to the laws of New York and is said to be comprised of various thoroughbred horse racing associations, including Eagle Downs and Continental. Plaintiff further alleges that through defendant Thoroughbred Racing Protective Bureau, an unincorporated association with offices located in New York State, defendant Thoroughbred Racing Association provides security personnel, for a fee, to its member thoroughbred horse racing associations. Defendant Krause is an employee of Keystone Race Track, which is located in Pennsylvania, the agent and/or employee of Thoroughbred Racing Protective Bureau, Continental, Eagle Downs and the Atlantic City Racing Association. Defendant Louis Russ is the agent and/or employee of the Pennsylvania State Horse Racing Commission. Defendant O'Brien is the vice-president and general manager of Eagle Downs; and defendant Rossi is the president of Continental.

The operative facts giving rise to the instant action are detailed in, the complaint as follows. Prior to August 28, 1973, plaintiff, a white male residing in Pennsylvania, was engaged in the occupation of groom and assistant trainer of thoroughbred race horses for 14 years and, during this 14 year period, was licensed to engage in said occupation by various state horse racing commissions, including Pennsylvania, New York, Maryland, Delaware and New Jersey. On August 28, 1973, plaintiff was employed in that capacity at the Liberty Bell Race Track by one Joseph Dougherty, a trainer of thoroughbred race horses, who was then participating in a pari-mutuel race meeting conducted by Continental. On or about that date, without notice or hearing, or any substantial evidence, plaintiff's license was revoked by defendant Russ[2] at the direction of defendant Krause who was then acting in the additional capacity of chief of security at Liberty Bell Race Track. Also, in conjunction with the action taken by defendants Krause and Russ, plaintiff was denied access to the premises of Liberty Bell Race Track in spite of the fact that he was employed at the meet then being conducted by Continental.

Plaintiff petitioned the Commonwealth Court of Pennsylvania for an order compelling the Pennsylvania State Horse Racing Commission to grant him a hearing on the revocation of his license, said commission refusing to do so upon plaintiff's initial request.[3] The Court granted plaintiff's petition; and after a hearing before an examiner appointed by the Pennsylvania Horse Racing Commission, plaintiff's license was reinstated. However, despite the reinstatement of plaintiff's license by the Commission, plaintiff was thereafter and continues to be denied access or admission to, and hence, the right to work at, Liberty Bell Race Track and Keystone Race Track by the defendants Krause, Thoroughbred Racing Protective Bureau, Eagle Downs, O'Brien, Continental and Rossi.

Count 1 of the complaint alleges a violation of § 1983 of the Civil Rights Act of 1871 in that plaintiff states therein

---

2. The power of the Pennsylvania Horse Racing Commission to revoke a license is granted in the Act of December 11, 1967, P.L. 707, § 11 as amended 15 P.S. § 2661(b)(5).

3. See the Act of December 11, 1967, P.L. 707, § 12.1 as amended 15 P.S. § 2662.1 which provides that the action of the Pennsylvania Horse Racing Commission or any association in refusing any person admission to or ejecting him from a race track is reviewable by the Court of Common Pleas of Dauphin County as provided by the Administrative Agency Act (Act of June 4, 1945, P.L. 1388, 71 P.S. § 1710.1 et seq.).

that the actions and conduct of the defendants as set out hereinabove deprived plaintiff of his rights, privileges and immunities secured by the Constitution and laws of the United States by the fact that he has been deprived of the opportunity of earning his livelihood as an assistant trainer at Liberty Bell Race Track, Keystone Race Track and all thoroughbred horse race meetings in which said defendants participate. The complaint further alleges that the actions and conduct of the defendants were undertaken under color of state law, more particularly pursuant to § 12.1 of the Act of December 11, 1967, P.L. 707, as amended 15 P.S. § 2662.1. Plaintiff further alleges that thoroughbred horse racing in the Commonwealth of Pennsylvania is a monopoly organized and conducted by the state for the purpose of providing it revenue; that Continental and Eagle Downs are granted licenses by the state to conduct horse race meetings; and that said horse race meetings and the activities of Continental and Eagle Downs are controlled and supervised by the Commission. In addition, he asserts that he has been deprived of a meaningful hearing at which he could confront adverse witnesses, present witnesses on his own behalf, give testimony on his own behalf and, further, that by their actions the defendants have in effect nullified the Commission's ruling reinstating his license, thereby arbitrarily, capriciously and maliciously depriving him of the opportunity to pursue his chosen occupation. Finally, plaintiff claims that the actions and conduct of the defendants have improperly and unlawfully stigmatized him as unfit to pursue his chosen occupation, depriving him of an important property right without due process of law.

Count II alleges a violation of § 1985(3) of the Civil Rights Act of 1871 in that plaintiff states therein that the defendants have conspired to deprive him of the opportunity to pursue his occupation and have, thereby, injured him by depriving him of his livelihood.

It is on the basis of the aforesaid allegations that we evaluate the complaint against defendants' motions to dismiss.

## II.  § 1983

In their motions to dismiss, defendants contend that plaintiff has not sufficiently alleged a violation of § 1983. Defendants' contention is based upon their position that (1) state action is not present in the instant action, (2) a constitutional right is not involved and (3) even if a constitutional right is involved there has not been any impermissible invasion of the right.

In regard to defendants' position as to the state action question, we find that the complaint is replete with allegations of conduct by defendants committed under color of state law sufficient to establish a case of state action capable of withstanding dismissal at this stage of the proceedings. Included in the numerous allegations concerning state action are the assertions that "thoroughbred horse racing in the Commonwealth of Pennsylvania is a monopoly organized and conducted by the State for the purpose of providing revenues for the State; CONTINENTAL and EAGLE DOWNS are granted licenses by the State to conduct horse racing meetings, and the horse race meetings and the activities of CONTINENTAL and EAGLE DOWNS are controlled and supervised by the COMMISSION."[4] Plaintiff also alleges that "the actions and conduct of the aforesaid defendants constitute an abuse and misuse of power possessed by them by virtue of State law and the actions and conduct of the Defendants were undertaken under color of State law, more particularly § 12.1 of the Act of December 11, 1967, P.L. 707, 15 P.S. § 2662.1, as amended."[5] *See, Catrone v. Massachusetts State Racing Commission et al.,* 404 F.Supp. 765 (D.Mass.1975); *Cf. Rockwell v. Pennsylvania State Horse Racing Commission and Continental Racing Association,* 15 Pa.Cmwlth. 348, 327 A.2d 211 (1974).[6]

---

4. Paragraph 26 of the complaint.
5. Paragraph 25.

6. We are not here making a final determination as to the state action issue because in

Defendants second and third arguments, that a constitutional right is not involved and if involved has not been violated, can be properly considered together. In response to this argument, plaintiff cites *New State Ice Company v. Liebmann,* 285 U.S. 262, 52 S.Ct. 371, 76 L.Ed. 747 (1931), for the proposition that one has a constitutional right to ply his trade. We believe that *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377, 1388 (1959) is more on point. *Greene* involved the validity of the Government's revocation of security clearance granted to an aeronautical engineer employed by a private manufacturer. He was discharged from his employment, solely as a consequence of the revocation, because his access to required classified information was barred. After his discharge, petitioner was unable to secure employment as an aeronautical engineer and for all practical purposes that field of endeavor was closed to him. Although the Court in *Greene* expressly limited its holding to the issue of whether or not the President or Congress explicitly authorized or empowered the action taken, the Court also stated that the revocation of Mr. Greene's security clearance had the effect of restraining him in the enjoyment of constitutionally protected rights—to wit, "property" in the loss of his job and "liberty" in seriously affecting, if not destroying, his ability to obtain employment in the aeronautics field. *See also, Wahba v. New York University,* 492 F.2d 96 (2nd Cir. 1974), *cert. den.,* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113.

■ The allegations of the complaint sufficiently set forth a right within the definition of "liberty" and of "property" as defined in *Greene.* Most certainly the conduct of defendants in denying plaintiff access to the track is much more than the exercise of defendants' claimed common law rights as private proprietors to refuse admission to whomsoever they choose. For, considering the fact that the assistant trainer field is state controlled and requires access to the race tracks, defendants' conduct may well preclude plaintiff from obtaining employment as an assistant trainer.

■ However, in order to sustain an action under § 1983, the alleged deprivation of constitutionally protected rights by state action must be *unreasonable. United States v. Briggs,* 514 F.2d 794, 798 (5th Cir. 1975) *citing Greene, supra,* 360 U.S., at 492–493, 79 S.Ct., at 1411, 3 L.Ed.2d, at 1388–1389. Our reading of Count 1 leads us to conclude that plaintiff cannot realistically allege an unreasonable deprivation; that any deprivation experienced by plaintiff is only tentative pending plaintiff's attempt to enforce his Pennsylvania statutory rights.

■ Plaintiff's claim of an unreasonable deprivation of constitutionally protected rights is essentially based upon the allegation that he has not received a due process hearing with regard to defendants' refusal to allow him entrance into Liberty Bell and Keystone race tracks. In this regard, paragraph 25 of the complaint states that defendants' actions were taken pursuant to § 12.1 of the Act of December 11, 1967, P.L. 707, 15 P.S. § 2662.1, as amended.[7] A reading of this particular Pennsylvania Statute discloses that plaintiff cannot and is not, as he contends, permanently barred from his occupation and deprived of property or liberty without a full hearing. The statute involved provides as follows:

*2662.1 Security personnel; powers and duties; penalty*

order to do so we must conduct "a detailed inquiry into, and a thorough sifting of, the record facts." *Magill v. Avonworth Baseball Conference,* 516 F.2d 1328, 1332 (3rd Cir. 1975). The state action issue is one of fact to be determined by considering all of the surrounding circumstances, and hence, cannot be determined without a fully developed record. *Braden v. Univ. of Pittsburgh,* 477 F.2d 1 (3rd Cir. 1973). *See generally, Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Burton v. Wilmington Parking Authority et al.,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Thus, all that we decide now is that the complaint alleges enough facts to withstand a motion to dismiss on the ground of lack of state action.

**7.** See Note 3 *supra.*

The State Horse Racing Commission and any association licensed by the commission is hereby authorized and empowered to employ persons as security personnel. These persons shall possess the powers and duties of a peace officer with respect to the enforcement of the criminal laws of the Commonwealth within the race meeting grounds or enclosure. Such designated persons are also authorized and empowered to interrogate and eject from the race meeting grounds or enclosure any persons suspected of violating any rule or regulation promulgated by the State Horse Racing Commission. *The State Horse Racing Commission and any association licensed by the commission may refuse admission to and eject from enclosure of the race track operated by any association, any person whose presence there is, in the sole judgment of the State Horse Racing Commission or the association, inconsistent with the orderly or proper conduct of a race meeting or whose presence or conduct is deemed detrimental to the best interest of horse racing. The action of the State Horse Racing Commission or any association in refusing any person admission to or ejecting him from a race meeting ground or enclosure shall be reviewable by the Court of Common Pleas of Dauphin County as provided in the act of June 4, 1945 (P.L. 1388), known as the 'Administrative Agency Law.'* (Emphasis supplied)

The Commonwealth Court of Pennsylvania has interpreted this statute as a bar to the permanent exclusion of any person from a race track without a hearing under the Administrative Agency Law Act of June 4, 1945, P.L. 1388, 71 P.S. § 1710.31. *Rockwell v. Pennsylvania State Horse Racing Commission, supra.* Indeed, plaintiff has successfully invoked the statute against the Pennsylvania Horse Racing Commission to obtain reinstatement of his license. Plaintiff does not argue that said hearing before the Commission, to which none of the movants here were a party, satisfies the requirements of § 2662.1 regarding plaintiff's exclusion from the race tracks by defendant associations and their personnel. Most important, plaintiff does not allege that an action brought pursuant to § 2662.1 would be nugatory and ineffective in terms of obtaining a due process hearing and, ultimately, a just resolution of the instant controversy.

Thus, this section of the Pennsylvania Statute which has been incorporated into plaintiff's complaint clearly reveals that plaintiff's exclusion from the track without hearing is only temporary and the hearing procedures under the Administrative Agency Law have at all times an still remain available to him. We conclude, therefore, that a temporary exclusion prior to hearing does not result in an an unreasonable deprivation of liberty and or property which is violative of constitutional due process. Thus, there has not been a deprivation of any right, privilege, or immunity secured by the Constitution and laws as required under § 1983; and accordingly we dismiss Count 1 of the complaint.

### III. § 1985(3)

■ We next consider whether plaintiff has sufficiently alleged a violation of § 1985(3). In order to state a cause of action under § 1985(3), one must allege (1) a conspiracy, (2) behind which is a "racial, or perhaps otherwise class-based invidiously discriminatory animus", (3) the object of which is the deprivation of equal protection of the laws, and (4) the result of which is injury to the plaintiff. *Griffin v. Breckinridge,* 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348–349 (1971). The crucial requirement relative to the instant action is the "class-based invidiously discriminatory animus requirement." Plaintiff and defendants provide different interpretations of what that requirement means— defendants argue it means plaintiff must at least be a member of a class to which the discrimination is directed, and plaintiff argues that membership in a class discriminated against is not essential.

That one must be a member of a race or class discriminated against, or at least involved with a race or class discriminated against, has been the Third Circuit's consistent interpretation of the class-based requirement. *See, Richardson v. Miller,* 446 F.2d 1247 (3rd Cir. 1971); *Pendrell v. Chatham College,* 386 F.Supp. 341 (W.D.Pa.1974). *See also, Phillips v. Trello,* 502 F.2d 1000 (3rd Cir. 1974) in the instant action, it is clear that plaintiff does not allege in his complaint that the animus behind his deprivation was racial or class-based discrimination as required by *Griffin.*[8] Consequently, we grant defendants' motion to dismiss as to plaintiff's § 1985(3) cause of action.

Order accordingly.

**8.** In addition to *Pendrell* and *Richardson,* plaintiff cites us to *Stephens v. City of Plano, Texas,* 375 F.Supp. 985 (E.D.Texas 1974) plus two circuit court cases which predate *Griffin* and were not decided by this Circuit. We need only point out that *Stephens* supports the Third Circuit's interpretation of the animus requirement and plaintiff's other cases, to the extent that they are inconsistent with *Griffin,* are immaterial.