Rose Mary CUBAS

v.

RAPID AMERICAN CORP., INC., et al.

Civ. A. No. 76–2163.

United States District Court,
E. D. Pennsylvania.

Aug. 21, 1976.
As Amended Sept. 29, 1976.

Andrew F. Erba, Community Legal Services, Law Center Northeast, Philadelphia, Pa., for plaintiff.

Alan F. Markovitz, Philadelphia, Pa., for Local 139.

Robert M. Nissenbaum, Philadelphia, Pa., for Rapid American.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This action was brought by a Cuban born naturalized American citizen against her former employer, J. H. Cohen and Sons (hereinafter Cohen), and against the union representing Cohen's employees (hereinafter the Local). She alleges that Cohen, in collusion with the Local, discharged her in retaliation against her organizing activities on behalf of a dissident faction within the union. This faction concerned itself with the grievances of non-white minority group workers. The complaint alleges ten causes of action, based on the Civil Rights Act of 1866, 42 U.S.C. § 1981, 1983, 1985(3); The National Labor Relations Act, 29 U.S.C. § 185(a) and (b), and the Labor Management Act, 29 U.S.C. § 411. Each defendant has filed a motion to dismiss. For the reasons stated below the motions will be denied as to counts 1, 2, 3, 4, 5, 6, 9 and 10, and will be granted as to counts 7 and 8.

Count 1 is based on the Civil Rights Act of 1866, 42 U.S.C. § 1981.[1] It is well settled that § 1981 applies to employment contracts. The right to equal treatment which is guaranteed by the statute, protects against discrimination based on race, or on alienage. *Jones v. United Gas Improvement Company*, 68 F.R.D. 1 (E.D. Pa.1975). National origin discrimination is actionable only to the extent that it is motivated by or indistinguishable from racial discrimination. Plaintiff Rose Mary Cubas describes herself as a naturalized citizen of the United States, who is Cuban born. Plaintiff contends that Cuban Americans may be considered a non-white racial group within the meaning of § 1981. Hispanic Americans claiming that they have been discriminated against in violation of § 1981 are entitled to introduce evidence to prove that the alleged discrimination was racial in character. *Maldonado v. Broadcast Plaza, Inc.*, 10 FEP Cases 839 (D.Conn.1974); *Miranda v. Clothing Workers, Local 208*, 10

---

1. 42 U.S.C. § 1981, provides, in pertinent part: "All [parties] . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."

FEP Cases 557 (D.N.J.1974). We cannot find, as a matter of law, that the alleged discrimination against the plaintiff as a Cuban American did not contain elements of racial discrimination.[2]

An alternative ground for refusing to dismiss count 1 of the complaint is that the plaintiff, even if she cannot be considered a non-white for the purposes of § 1981, is nevertheless entitled to relief under the statute. Section 1981 affords a federal remedy against discrimination in private employment on the basis of race. *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The statute prohibits racial discrimination against whites as well as against non-whites. *McDonald v. Santa Fe Trail Transportation Co.*, —— U.S. ——, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). Assuming, for this discussion, that plaintiff is white, the precise issue raised in count 1 is whether an employer violates § 1981 if he intentionally causes damage to a person of one race, in order to advance a policy of racial discrimination against persons of a different race. The Supreme Court was not faced with this question in *McDonald v. Santa Fe Transportation Co., supra*,[3] and we know of only one circuit court decision which has decided it. In *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306 (2d Cir. 1975), the Second Circuit held that a white man whose employer allegedly forced him into retirement solely because he had sold his house (located in a neighborhood occupied by many of defendant's white employees) to a black person, had stated a cause of action under § 1981. The decision was based on *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), and on the common legislative history of §§ 1981 and 1982 of Title 42, which are both derived from § 1 of the Civil Rights Act of 1866.

In *Sullivan*, a white plaintiff alleged that he had been punished for trying to

2. Unfortunately, judicial decisions offer little guidance about the methods for proving that a group has common racial characteristics. In cases interpreting the 14th Amendment, it has been held that the question whether there exists within a community a distinct class of persons who, as a class, are entitled to equal treatment, is a factual issue. *Hernandez v. Texas*, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954) (Discrimination against Mexican Americans in selecting jury panels). Equal Protection Clause cases analyzing the classness of Hispanic American groups have not focused on racial characteristics because classness could be proved on the basis of cultural and ethnic commonalities, and of the discriminatory social practices directed at the class by majority groups. In *Cisneros v. Corpus Christi Independent School District*, 324 F.Supp. 599, 606 n. 30 (S.D.Tex.1970), the court quoted from the testimony of an expert witness who said Mexican Americans were a minority from the social science, legal, cultural, and racial points of view. In *Van Hoomissen v. Xerox Corporation*, 368 F.Supp. 829, 840 n. 7 (N.D. Cal.1973), the court explicitly avoided deciding the question whether Mexican Americans should be considered non-white for the purposes of § 1981. We are not aware of an authoritative and judicially manageable method for distinguishing between national origin discrimination and racial discrimination when both may be present at the same time. On the one hand, courts might attempt on a case by case basis to separate out the elements of racial and national origin discrimination. Another approach would be to consider sociological and historical evidence relevant to the experience of a particular national origin group in the community in which discrimination is alleged, together with anthropological evidence about the racial characteristics of the national origin group, and determine whether it should be rebuttably presumed that discrimination against that group is infected with racial discrimination.

3. In *McDonald*, one black and two white workers were charged with misappropriating property being carried by its employer, a shipper. Subsequently, the white employees were fired because of this incident, but the black employee was retained. The Court found that the white employees had been discriminated against on the basis of their race, and it held that this discrimination was actionable under § 1981. The question posed by the instant case would have been present in *McDonald, supra*, if a black employee had protested the discriminatory discharge of the white workers, been discharged in retaliation for the protest, and then joined the two whites in their suit against the employer.

The Supreme Court did consider an analogous fact situation in connection with a claim under 42 U.S.C. § 1983, in *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

vindicate the rights of non-white minorities. The defendant had expelled him from a corporation operating community recreation facilities solely because he had leased his house and assigned his membership share in the corporation to a black person. Although the plaintiff had sued under both §§ 1981 and 1982, the Supreme Court referred explicitly to § 1982 in setting out the rationale for its holding that the plaintiff had standing to maintain the action. According to *DeMatteis, supra,* the Supreme Court did not thereby limit its holding on the standing issue to § 1981.

> "[W]hite persons [must] be accorded standing to sue under both § 1981 and § 1982 in circumstances similar to those present in *Sullivan.*" 511 F.2d 306, 312 n. 9.

We agree with this conclusion. Because the instant case presents circumstances that are in all material respects similar to *Sullivan,* we hold that Cubas has stated a cause of action under § 1981.[4]

■ Although we have found no Third Circuit opinions directly in point, we note that our decision is consistent with *Richardson v. Miller,* 446 F.2d 1247 (3d Cir. 1971). In *Richardson,* it was held that the plaintiff stated a cause of action under § 1985(3) when he alleged that the defendants conspired against him (for racially discrimina-

tory reasons) to deprive him of equal protection of the law. The plaintiff was not himself a member of the racial group against which the defendants' animus was allegedly directed. Nevertheless, his discharge from employment by the defendants—allegedly because of his opposition to their racially discriminatory employment practices—was held actionable under § 1985(3).[5] As recently stated in *Whetzler v. Krause,* C.A. No. 75–1795, 411 F.Supp. 523 (E.D.Pa.1976), the Third Circuit's interpretation of the class-based requirement in § 1985(3) is

> "[t]hat one must be a member of a race or class discriminated against, or at least involved with a race or class discriminated against . . . ." At 529.

Count 2 is based on the defendant employer's alleged breach of provisions in pertinent local and national labor agreements which establish procedures for calculating "down time" pay.[6] Under the agreements, a sewing machine operator in Cohen's factory is entitled to down time pay for any period in which she is idled by a machine breakdown. Because her regular wages are computed on a piece work basis, she otherwise would earn nothing for periods of idleness forced upon her by a defective machine. Cubas alleges that despite the fact that she reported her machine breaking down, Cohen refused to give her down time

4. *But see Van Hoomissen v. Xerox Corporation,* 368 F.Supp. 829 (N.D.Cal.1973) at 838–840. A white plaintiff there alleged that his employer fired him in retaliation against his asserted attempt to oppose his employers' alleged discrimination against Mexican Americans. The court held that "plaintiff, a white male, has no standing to sue under Section 1981 . . . ." 368 F.Supp. at 840. The holding appears to rest primarily on a line of circuit court and district cases predating *McDonald, supra,* which held that a white person could, under no circumstances, bring suit under § 1981. That ground for decision has of course been vitiated by *McDonald.* To the extent that the holding may be based on a distinction between property rights protected under § 1982, and injury to employment protected under § 1981, we disagree with that analysis for the reasons set forth in *DeMatteis,* namely, the historical interrelationship between the two sections. Finally, we think the court's reading of *Agnew v. City of Compton,* 239 F.2d 226 (9th

Cir. 1956), *cert. denied,* 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910, is too broad given that *Agnew* mentions no allegation by the plaintiff that he was injured by racial discrimination directed either against himself or against others.

5. The plaintiff has alleged a conspiracy to deprive her of federal rights protected against both state and private action by 42 U.S.C. § 1981. It therefore is unnecessary for her to allege that the defendants acted under color of state law, to state a claim under 42 U.S.C. § 1985(3). *Cohen v. Illinois Institute of Technology,* 524 F.2d 818 (7th Cir. 1975); *Milner v. National School of Health Technology,* 409 F.Supp. 1389 (E.D.Pa.1976).

6. A federal remedy for the breach of a collective bargaining agreement is provided for in § 301 of the National Labor Relations Act, 29 U.S.C. § 185.

credit. She further contends that when she asked a union representative to take action against this deprivation, the representative made it clear to her that the union was willing to take no action in her behalf. The theory of liability against the employer is breach of the collective bargaining agreement; the theory of recovery against the union is breach of its duty of fair representation.[7] Cohen argues that plaintiff's claim is barred because a) she failed to exhaust internal union remedies; and b) she failed to exhaust remedies provided for in the collective bargaining agreement.[8]

▮ Ordinarily, an employee bringing an action under § 301 must allege with specificity her exhaustion of contractual remedies for her grievance. She must describe the efforts taken through her union to process her grievance. Also, to the extent that there is grievance machinery she can activate by her own action, she must allege her efforts in that regard. We find that the plaintiff has satisfied the latter requirement by pleading (with sufficient support in the language of the collective bargaining agreement) that the grievance machinery provided for in the applicable contracts leaves the control of the higher reaches of the grievance process in the hands of the union.[9]

▮ This leaves us with the question of exhaustion of intra-union remedies. Plaintiff has not attempted to plead that she exhausted the grievance procedure, but has instead attempted to plead that she began to utilize intra-union procedures but ceased her efforts when they became futile. The Supreme Court has recognized two kinds of futility exceptions to the ordinary rule of exhaustion. In the first situation, the employee has a grievance against her employer and does not initially have reason to believe that she will be unfairly treated by the

union in processing her grievance. But once the grievance is submitted the union then breaches its duty of fair representation. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The second exception applies to cases in which the union behaves unfairly prior to the time that the grievance might be filed, and where the union may indeed have contributed to that very grievance by its own actions. *Glover v. St. Louis-San Francisco Railroad Co.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969).

▮ Viewing the pleadings in the light most favorable to the plaintiff, as we must do on a motion to dismiss, *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), we find that one or the other of the futility exceptions applies to each of the plaintiff's claims. The down time pay allegations conform to the *Vaca* exception (if not to both), and the discharge allegations satisfy the *Glover* exception. This is not a case where the plaintiff has "merely alleg[ed] . . . a conspiracy between the company and the union to get rid of plaintiff." *Aldridge v. Ludwig-Honold Manufacturing Co.,* 385 F.Supp. 695, 699 (E.D.Pa.1974). Rather, plaintiff has described the goals, actions, and effect of the actions of an alleged conspiracy. As readily admitted by plaintiff's counsel at oral argument, plaintiff bears the ultimate burden of proving these allegations before she can finally be excused for having not exhausted contractual remedies. However, at this stage of the case the allegations of repeated complaints to company and union officials and of hostile responses thereto make it clear that no allegation of having undertaken "time-consuming formalities should be demanded [of her]." *Glover v. St. Louis-San Francisco Railroad Co., supra,* 393 U.S. at 331, 89 S.Ct. at 552. We conclude that

---

7. The alleged cause of action against the union for breach of duty of fair representation is set forth in count 5.

8. Prior to plaintiff's filing of an amended complaint the employer contended that the plaintiff had not alleged specific enough facts in support of her allegations. The plaintiff's addition in paragraph 11 of the amended complaint, of the

words "despite the fact she reported her machine breaking down," is sufficient to quell any objection on this ground.

9. Whether her properly pleaded contention is, in fact, correct, cannot be decided at this stage in the proceeding.

motion to dismiss count 2 of the complaint must be denied. The reasons set forth in this discussion apply equally to counts 3, 4, 5, and 6.[10]

 In count 7, the central contention is that

"by harassing and discharging plaintiff without just cause, defendants interfered with plaintiff's right to contract and engage in her chosen occupation."

Absent any elaboration of this purported cause of action, we construe it—to the extent that it is not redundant with the alleged claim under 42 U.S.C. § 1981—to be a claim of deprivation of liberty and property in violation of the 14th Amendment. *See, e. g., Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). As so interpreted, this paragraph fails to state a cause of action under the 14th Amendment because there is no proper allegation of state action. The plaintiff does not even purport to claim that Cohen acted under the color of state law. As for the Local, plaintiff contends that by virtue of its status as a certified representative under the National Labor Relations Act it was acting under the color of § 9 of the aforesaid federal law (which would make the 5th Amendment applicable). This contention is without merit. Plaintiff relies primarily on *Linscott v. Millers Falls Co.*, 440 F.2d 14 (1st Cir. 1971) a case in which the relevant actions by the union consisted of carrying out a procedure that Congress had specifically endorsed 440 F.2d at 16 n. 2. The holding does not stand for the proposition that all actions taken by unions which are under the jurisdiction of the National Labor Relations Act are governmental actions. In the instant case, the Local's allegedly unlawful behavior was not taken in connection with efforts to comply with a federally favored procedure. Consequently, plaintiff's First and Fifth Amendment claims in the 8th

count must be dismissed together with the 7th count.[11]

 Count 9 alleges a cause of action under 42 U.S.C. § 1985(3). The plaintiff has alleged that there was a conspiracy having a racial (or otherwise class-based) invidiously discriminatory animus, the object of which was to deprive plaintiff of the equal protection of the law. State action is not a necessary ingredient of a 13th Amendment claim. *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969). Consequently, count 9 will not be dismissed. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Richardson v. Miller*, 446 F.2d 1247 (3d Cir. 1971); *Whetzler v. Krause*, 411 F.Supp. 523 (E.D.Pa.1976).

The 10th count alleges a violation of the Labor Bill of Rights, 29 U.S.C. § 411(a)(2). That statute guarantees every member of a labor organization freedom of speech and assembly. The federal remedy is provided in § 412. The defendant union contends that actions by a labor organization which infringe on the freedom of speech and assembly of an employee only infringes the Labor Bill of Rights to the extent that it affects her rights as a union member. Assuming that this general rule is correct, we find that the parties have not adequately briefed the issue of what constitutes a cognizable infringement of union membership rights. In *Duncan v. Peninsula Shipbuilders Association*, 394 F.2d 237 (4th Cir. 1968), the court held that a union's concerted action with an employer to effect the discharge of a union member in circumstances where discharge would necessarily terminate the plaintiff's union membership violated the Labor Bill of Rights. The *de facto* expulsion was considered "discipline" within the meaning of 21 U.S.C. § 411(a)(5). We note that the plaintiff has not pleaded that her layoff (which she contends was a *de facto* discharge) resulted in the termina-

---

10. Also, we reject defendants' contention that various prior adverse administrative decisions are res judicata to plaintiffs claims. *See Hollander v. Sears, Roebuck & Co.*, 392 F.Supp. 90 (D.Conn.1975); *Guerra v. Manchester Terminal Corp.*, 498 F.2d 641 (5th Cir. 1974).

11. Because the 13th Amendment allegation in count 8 is redundant with count 1, there is no reason to retain just that portion of count 8.

tion of her union membership rights. Whether such an allegation would be necessary for her to maintain this action is another issue which has not been adequately briefed. Consequently we reserve decision on the motions to dismiss with regard to count 10.